Argued March 3; affirmed April 6; rehearing denied May 25, 1943

# KEEFER *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(135 P. (2d) 806)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and HAY, Associate Justices.

*C. L. Marsters,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and C. S. Emmons and Walter H. Evans, Jr., Assistant Attorneys General, on the brief) for appellant.

*Gunther F. Krause,* of Portland, for respondent.

BAILEY, C. J. The plaintiff, Boyd L. Keefer, on August 23, 1940, while employed by Kingsley Lumber Company in Multnomah county, Oregon, sustained, according to the allegations of the complaint that are admitted by the answer, "a personal injury by accident arising out of and in the course of said employment by violent or accidental means as follows, to-wit: While pushing lumber into a car, using a roller, plaintiff stepped back to brace himself, when he stepped upon a knot or some object on the floor which threw him sideways and down, wrenching his right knee." At the time of the accident both the employer and the plaintiff were subject to the provisions and entitled to the benefits of the Oregon workmen's compensation law.

Within the time provided by law the plaintiff filed with the State Industrial Accident Commission a report of his accident and a claim for compensation for the injuries he sustained. The claim was allowed and the plaintiff was paid compensation for temporary total disability from the date of the accident until April 9, 1941. One week after the latter date the commission made and entered its final order, terminating the plaintiff's claim for temporary total disability as of April 9, 1941, and making no allowance for permanent disability.

Thereafter, within sixty days from the entering of that order, the plaintiff filed with the commission a petition for rehearing, in which he set forth the grounds on which he considered "the order and award unjust and unlawful," claiming that his disability was permanent and constituted an injury known in surgery as a permanent partial disability equivalent to one

hundred per cent loss of function of a leg. His petition was denied on April 23, 1941; and on May 7 of the same year this action was instituted.

The defendant admits all the allegations of the complaint except those contained in paragraph IV thereof, thus reading:

"That by reason of the said accidental injury and as the proximate result thereof, plaintiff suffered a severe strain, wrenching and tearing of the muscles, tendons, ligaments and nerves of the right knee, that a surgical operation was performed on said knee and since said accident plaintiff has been unable to use said leg in any gainful occupation. That plaintiff is informed and believes and alleges that said disability is permanent and constitutes an injury known in surgery as a permanent partial disability equivalent to one hundred per cent of a leg."

The case was tried before a jury. In response to special interrogatories submitted to it the jury found that the plaintiff had suffered permanent partial disability as the proximate result of the injury and that such permanent partial disability was fifty per cent loss of function of a leg. From the judgment entered in accordance with the findings of the jury the defendant has appealed.

During the examination of the plaintiff in his case in chief it was brought out that on May 31, 1941, while he was working for the same employer above mentioned, the plaintiff fell from a tree and injured his back, and that such subsequent injury aggravated the pain in his knee. It was also developed from the plaintiff's testimony that he had filed with the commission a claim for compensation for disability resulting from the later accident.

At the close of the plaintiff's case in chief the defendant moved for involuntary nonsuit, on the grounds that it had been shown by the testimony that the injury to the plaintiff's knee had "been aggravated and made worse by a subsequent accident suffered on May 31, 1941"; that a claim for compensation for the later accident had been filed and was still pending before the commission; "that to proceed in this case would have the effect of permitting plaintiff to make or to secure a double recovery for the injury to his knee; and that in these cases the plaintiff is to recover at the time of trial for the disability he has at that time from a previous accident and not from any subsequent intervening accident, and that it is impossible for this jury, for this court, to distinguish between plaintiff's present disability from the accident happening" on August 23, 1940, "and that which is due to the accident suffered May 31, 1941."

One of the arguments advanced by the defendant in support of its contention that the court should have granted its motion for involuntary nonsuit is that such action by the court would not have deprived the plaintiff "of one cent of compensation that he is justly entitled to; he will have lost none of his legal rights." It is then asserted that when the claim for compensation for plaintiff's injury of May 31, 1941, is finally closed, the plaintiff, if dissatisfied with the award, may appeal, "and at that time a jury will have the opportunity to pass upon the combined effect of the two injuries." No statutory provision or other authority is cited in support of this statement.

■■ The plaintiff's accident of May 31, 1941, occurred after this action was commenced. The commission had finally closed his claim on account of his 1940 injury. The only remedy then left to the plaintiff, inas-

much as he was not satisfied with the commission's order, was to follow the course he did take, namely, to file a petition for rehearing and upon the denial of that, to appeal to the circuit court: §§ 102-1773 and 102-1774, O. C. L. A. Even though the injury to the plaintiff's knee caused by the accident of 1940 may have been aggravated by the 1941 accident, nevertheless the only compensation he could recover for that condition would be the award to be allowed him on a new and separate claim based solely on his injuries resulting from the later accident.

■ The "aggravation of disability" mentioned in subsection c of § 102-1771, O. C. L. A., refers to the course or progress of the workmen's condition resulting from the specific injury for which an "award or arrangement of compensation" has been made. It applies to cases in which the disability proves to be greater than supposed when the order was made closing the case. The subsection has no bearing on the condition of the workman's health resulting from a further accident, whether compensable or not.

The plaintiff is not claiming compensation for aggravation of the injury he suffered in 1940, nor is he seeking recovery in this action for the additional injury he sustained in 1941. His contention is that the commission in making its order of April 16, 1941, should have awarded him compensation as for permanent partial disability equivalent to one hundred per cent loss of function of a leg. That condition of his leg, he asserts, existed prior to the date of the commission's final order.

■ In our opinion, the jury would experience no real difficulty in determining the extent of the plaintiff's disability resulting solely from his 1940 accident. Prior to that occurrence the plaintiff had been steadily

engaged in hard manual labor and had had no trouble in discharging the numerous duties of his various employments. The defendant admits that on August 23, 1940, the plaintiff sustained a personal injury by accident arising out of and in the course of his employment, by violent or external means, and that such injury entitled him to compensation. Since that accident the plaintiff, according to his own testimony, has not at any time had full use of his right leg, which was then injured.

The physician whom the plaintiff called as an expert witness testified that he had examined the plaintiff on April 18, 1941, which was approximately two weeks prior to the 1941 accident. He described fully and in detail the condition of the plaintiff's right leg as he then found it. According to his testimony, the plaintiff at that time was ''unable to use the leg to any advantage, his leg was unstable, he walked with care. I also tested him out for sensation in that leg, and at that time there was more or less numbness in his feet and in his leg.''

■■ When a plaintiff is seeking to recover damages for aggravation of a prior injury it is necessary that he show the extent of his impairment then resulting, in order to prove the effect of the later injury. He is not denied recovery because of the difficulty a jury might possibly have in segregating the results of the two injuries. Likewise in this case, the plaintiff is not to be deprived of his remedy because of the occurrence of the 1941 accident, even though that increased the disability with which he was afflicted. There was evidence, however, that in his later accident the plaintiff's back was injured, and the only effect on his right leg was that the pain in his knee was intensified.

■ The defendant has raised for the first time in this court the objection that the plaintiff has failed to prove that his disability was the proximate result of the accidental injury alleged in his complaint. It was not assigned as one of the reasons for granting a nonsuit; and no motion was made for a directed verdict in the defendant's favor. That question is therefore not before us for consideration.

At the time of his 1940 accident the plaintiff was afflicted with syphilis, which fact was known to him. Previously thereto he had been treated for that disease. The evidence is undisputed that up to the time of the accident the plaintiff had been engaged in strenuous labor, his disease had not interfered with his work and he had not suffered any disability because of it.

■ The Oregon workmen's compensation law, as that of many of the other states, prescribes no standard of physical fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health. The great weight of authority is to the effect that the existence of a venereal disease which does not impair the employee's ability to work will not prevent his recovery of compensation if an accident accelerates the disease to a degree of disability: *Walker v. Minnesota Steel Co.*, 167 Minn. 475, 209 N. W. 635; *Dickson Construction & Repair Co. v. Beasley*, 146 Md. 568, 126 A. 907; *Pinyon Queen Mining Co. v. Industrial Commission*, 59 Utah 402, 204 P. 323; annotations, 19 A. L. R. 104, 28 A. L. R. 207, 60 A. L. R. 1310. See also, 1 Campbell on Workmen's Compensation, page 80, § 104; and *Baker v. State Industrial Accident Commission*, 128 Or. 369, 274 P. 905.

In *Dickson Construction & Repair Co. v. Beasley,* supra, it was asserted that: "The undisputed evidence in this case is that the extended disability of this man was beyond the duration of any natural results of the injury itself, and was prolonged only by the infection, and therefore it was a natural result of the infection, rather than of the injury." That contention was answered by the court as follows:

"This, it seems to us, could never be a valid argument in a case in which there is evidence sufficient for a finding of fact that the disease or infection was previously inactive, and was made disabling only by the intervention of the injury. For, once it has been determined that this was the fact, then any prolongation of the disability by the infection so started up is still regarded as a prolongation of the effects of the injury. From the principle that the activity of the infection is to be treated as the result of the injury, it must follow that the prolongation of disability by that activity is within the results of the injury. There is, furthermore, an abundance of authority for treating all that follows any aggravation or acceleration of a disease or infection by an injury as the result of the injury": citing numerous authorities.

The defendant in the case at bar apparently does not question the general rule above stated. It takes the position that under the court's instruction to which it excepted the jury was permitted to award the plaintiff compensation for aggravation of an existing disability, and that he had not pleaded such aggravation.

Its contention is that in order to recover compensation for aggravation of a former injury a plaintiff must set forth his former injury and the extent to which it has been aggravated. Numerous cases are

cited in support of this proposition. The defendant then asserts that because the plaintiff in this case has not pleaded the disease with which he was afflicted at the time of his injury, he should not be allowed to recover for the aggravation of that disease. All such argument, however, is beside the point, inasmuch as the plaintiff herein is not attempting to recover compensation for aggravation of a pre-existing disability.

■ The instructions to which the defendant excepted were actually more favorable to it than the facts warranted. They told the jury that the plaintiff might recover "for the additional degree of disability, if any, brought about by the accidental injury suffered by him on August 23, 1940", thereby implying, at least, that the plaintiff was on August 23, 1940, suffering from some disability. There was no basis in the evidence for such an assumption, and it might have minimized, in the minds of the jurors, the results of the plaintiff's accidental injury.

We find no error herein prejudicial to the appellant. The judgment accordingly is affirmed.