Submitted January 4, 1972, reversed February 4, 1972

RIOS, *Respondent, v.* TIMBER STRUCTURES,
INC., *Appellant.*

493 P2d 174

Robert E. Joseph, Jr., Andrew F. Fink, and
Souther, Spaulding, Kinsey, Williamson & Schwabe,
Portland, for appellant.

No appearance for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and
FOLEY, Judges.

LANGTRY, J.

This is a workmen's compensation case. Defend-
ant appeals from a finding of the circuit court that

claimant had a 50 per cent loss function of an arm by reason of a claimed unscheduled disability in his back.

Claimant was injured in a 1966 accident on his first day on the job. He was allegedly hit in the left wrist and both calves by crooked bolts being turned with a power drill. His first report claimed no injury to his back. However, shortly thereafter he began to complain of back pain he said resulted from his quick movement to avoid having a gyrating bolt hit his face. At the first hearing he claimed the bolts hit his back and chest. One doctor reported claimant as claiming his back was hurt as he fell.

The claim for back injury was rejected by defendant, a hearing officer, the Workmen's Compensation Board and on the first circuit court appeal the claim was sent back for further treatment and evaluation. After further examination and treatment the case was closed again and in successive appeals a hearing officer and the Workmen's Compensation Board rejected the claim and on the second appeal to the circuit court the allowance mentioned above was made.

The circuit judge commented that this case has more doctors in it than the Medical Arts Building— we count 11 doctors by name, with an indication that about three or four others also have consulted with and examined claimant. Claimant's most recent attorney—the last of five he has had in this proceeding— has not filed a brief on this appeal.

Physicians' reports for about six months after the accident indicate they thought claimant's complaints were out of line with objective physical symptoms and were attributable to functional overlay. Claimant is an immigrant from Peru, here since 1961. He has been unable to find work comparable with that

which he had in Peru. He has indicated to various physicians that an award of permanent disability will enable him to receive vocational training at a job more in line with his education. The physicians who have examined claimant more recently have found some evidence of muscle spasm in the back, but even with them a pattern of initial sympathy and then discovery of inconsistencies and of emotional explanation therefor runs through their reports. One of the more recent is a neurosurgeon who attempted to administer a myelogram in an effort to discover the existence of a possible ruptured spinal disc, which was advanced as a cause of the trouble by another physician. Plaintiff could not tolerate the procedure when the attempt was made so it was unsuccessfully terminated. Requests to the claimant to return for another attempt at a myelogram were ignored.

The hearing officer found:

"It would require a heart of stone and a complete lack of human understanding to fail to empathetically commiserate with claimant. When he arrived in the United States he was educationally, temperamentally, economically and sociologically unfit for the role in which he was cast.

"An employer takes a workman as he find[s] him and if a workman who is psychologically unfit receives a compensable injury which aggravates his neuroses, the employer is required to compensate the workman for both his physical and psychological disabilities. To prevail, the workman must present medical evidence causally relating the result to the injury * * *.

"There is no medical evidence claimant ever sustained any injury to any portion of his anatomy other than his left wrist and both calves. There is no medical evidence that any of his back, chest,

neck, head, sciatic or visceral complaints are causally related to the injury of September 16, 1966. There is no believable evidence claimant has any permanent partial disability resulting from his injury of September 16, 1966, and I so find."

We come to a similar conclusion. In *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 192-193, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971), we said:

"In so far as the resolution of an issue turns upon the credibility of witnesses the court should give weight to the findings of the hearing officer who saw and heard those witnesses. * * * Nevertheless, even in the resolution of those issues the court is not bound by the findings of the hearing officer * * *.

"* * * * * *

"* * * [G]iving weight to administrative expertise means that if the record is such that the circuit court, after reviewing it, cannot say with any degree of conviction what the proper result should be, it should then defer to the administrative agency and affirm the result reached by it * * *."

We think that these observations in *Hannan* are applicable. In this de novo review we conclude that the claimant has failed to carry his burden of proof and that there should be no award for permanent disability.

Reversed.