Argued January 24, affirmed March 23, 1972

PATITUCCI, *Respondent, v.* BOISE CASCADE
CORPORATION (No. 365-531), *Appellant.*
495 P2d 36

*Roger R. Warren,* Portland, argued the cause and filed the brief for appellant.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison and Brian L. Welch, Portland.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

The question presented in this workmen's compensation case is whether the circuit court erred in finding claimant permanently and totally disabled as a result of her industrial accident of May 16, 1967.

The claimant, 56 years old at the time of her compensation hearing, had been employed for more than 25 years in general office work and secretarial work. She was unmarried, lived with an older sister and had a high school education plus some additional training in shorthand and typing. At the time of the injury involved here, she was employed by Boise Cascade Corporation as a secretary. On May 16, 1967,

she tripped over an electric cord near her desk and fell back against a wall, twisting and injuring her back and shoulders. She continued to work for several days but began suffering pain in her arms and in the neck area. On June 10, 1967, she went to see Dr. Lawrence Noall, an orthopedic surgeon who had known and treated her during the past 20 years. He treated her for the injuries she sustained on May 16, 1967, diagnosing them as

"* * * a sprain of the muscles and ligaments of the cervical spine and upper dorsal spine superimposed on some pre-existing arthritic and intervertebral disc changes which have resulted in a radicular neuritis involving both arms, but now [April 21, 1970] primarily the right upper extremity and hand."

Dr. Noall stated that he did not think claimant was able to gainfully perform the work of a secretary "which is the only work * * * she's qualified to do. * * *" He testified that the only kind of work that the claimant could do would be

"* * * something that is largely sedentary; something in which the arms do not have to be suspended such as you would have to with continuous typing. And also it would need to be something that does not involve lifting."

Dr. Noall testified further that the claimant could not work at any job unless she could lie down and rest for periods during the regular work day. He stated:

"* * * [T]he injuries that she sustained * * * is the thing that triggered the present * * * symptoms involving the neck and the arm."

He estimated her physical disability "approximately 20 percent whole body permanent physical impairment and loss of physical function." She was also treated

by Dr. Canfield Beattie, an opthalmologist, for visual problems—distortion of vision and inability to produce tears, which he related to the industrial accident.

■ There was a great deal of other medical evidence. A review of this evidence leads to the conclusion that claimant's physical impairment was less than would normally result in permanent total disability, but that it was superimposed on her underlying psychological or neurotic problems. Some doctors thought she was not permanently totally disabled. We agree with the treating doctor and the hearing officer that she was, in fact, properly rated a permanent total. The question remains whether the disability is causally connected to the industrial accident.

A psychological evaluation of claimant was performed by a clinical psychologist, Dr. Julia Perkins, and, without seeing the patient, by psychologist Dr. Norman Hickman, both of whom found claimant had a moderately severe, chronic psychopathology which was unrelated to the industrial accident. Based upon this evaluation the defendant-employer claims there are two separate disabilities, one physiological and the other psychological, moderately severe. He states, therefore, that the employer, not being responsible for the psychological overlay, would not be chargeable for any more than her physiological disability.

■ The hearing officer found claimant was permanently and totally disabled but that her permanent total disability was not caused by her industrial injury "* * * because the clinical psychologists do not causally relate her psychological problems to her injury. * * *" The Workmen's Compensation Board agreed with the latter finding of the hearing officer

but did not agree that she was permanently totally disabled.

> "The employer takes the employe as he is. An aggravation by industrial accident of a pre-existing condition is compensable. *Kehoe v. Ind. Accident Com.,* 214 Or 629, 332 P2d 91 (1958); *Keefer v. State Ind. Acc. Commission,* 171 Or. 405, 135 P2d 806 (1943)." *Watson v. Georgia-Pacific Corp.,* 5 Or App 353, 356, 478 P2d 431, 484 P2d 1115 (1970).

It is not necessary that the accidental injury be the principal cause of the disability. It is sufficient if it contributed to claimant's disability.

> "Under the purposes to be accomplished in social welfare by the enactment of the Workmen's Compensation Acts, we are of the opinion that the law does not weigh the relative importance of the several causes that bring about the injury—it is sufficient if the accident occurring through employment is a contributing cause of the result. 1 Larson's Workmen's Compensation Law 50, Categories of Risk § 7.40." *Kehoe v. Ind. Accident Com.,* 214 Or 629, 637, 332 P2d 91 (1958).

■ If the contribution is minimal or *de minimis,* for example, if claimant would have become disabled by psychological developments at the same time, whether she was involved in an industrial accident or not, then the accident would not be deemed to have contributed to the disability. Here, Dr. Perkins, the psychologist whose examination was the basis for the hearing officer's denial of causal connection testified as follows:

> "Q If she had not been injured as a result of the accident on the 23rd of May, 1967, for how long would she have continued to function?
>
> "A On the job?
>
> "* * * * * *

"A This is hard to say, but it would be my judgment maybe five or six years."

This testimony indicates that but for the accident she would, in the judgment of the psychologist, have been able to continue in secretarial work for some period of time. This supports the trial court's finding that the industrial accident was a contributing factor to the disability.

The general rules set forth above apply to physical disability which is, in whole or in part, of hysterical or neurotic origin. See, for example, the hearing officer's statement of the rule in *Rios v. Timber Structures, Inc.,* 8 Or App 155, 493 P2d 174 (1972). The rule is stated as follows in 1A Larson's Workmen's Compensation Law 622.162, Personal Injury by Accident § 42.22:

> "* * * [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, psychotic, depressive, or hysterical symptom or personality disorder, have accepted this rule. * * *"

■ We conclude with the circuit court that claimant became permanently and totally disabled as a result of her industrial accident of May 16, 1967.

Affirmed.