Argued May 22, affirmed July 22, 1974

HAUGEN, *Respondent, v.*
BEAUTIQUE A GO-GO (No. 396-143), *Appellant.*
524 P2d 553

*Fred M. Aebi,* Portland, argued the cause for appellant. With him on the brief were Gearin, Cheney, Landis, Aebi & Kelley and Jeffrey M. Batchelor, Portland.

*Edward J. Murphy, Jr.,* Portland, argued the cause for respondent. With him on the brief were Wheelock, Niehaus, Baines & Murphy, Portland.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

In this workmen's compensation case the hearing officer originally awarded claimant permanent total disability but after remand by the Board and a second, "supplemental," hearing, changed his determination to a permanent partial award. The Board affirmed the hearing officer and the employer-carrier appeals from the judgment of the circuit court which reversed the hearing officer and the Board and awarded claimant permanent total disability.

An explanation of the unusual procedure followed in this case is in order. A hearing was held on April 28, 1972 which resulted in findings and determination by the hearing officer, including a finding that the claimant was permanently and totally disabled. After the claim had been certified to the Board for review, it was remanded by the Board to the hearing officer for "redeliberation" for the reason that the hearing officer had failed inadvertently to consider a deposition of the claimant which was a part of the record. At the second hearing held on December 19, 1972, in addition to the overlooked deposition, additional evidence was presented by the employer, con-

sisting of several photographs and four rolls of movie film of the claimant. In a supplemental opinion and order dated March 15, 1973, the hearing officer revised his findings, holding that claimant was not permanently and totally disabled but was entitled only to an award of permanent partial disability. This holding was appealed to the Workmen's Compensation Board which affirmed the order of the hearing officer. This order, in turn, was appealed to the Circuit Court of Multnomah County. The circuit court found claimant to be entitled to an award of permanent total disability but in all other respects[1] affirmed the order of the hearing officer.

Claimant was born on January 16, 1934. She has been married twice and has six minor children. She has a limited education, having attended the public school through the tenth grade. Her work experience is varied. She has worked as a veterinarian's helper and assisted her husband in his business of grooming poodles. While working for the veterinarian in 1966 claimant had an accident and sustained injuries to her arm and neck. She was treated by Dr. Michael Rask, an orthopedist. As a result of this accident she had a cervical fusion at C5-6 for her neck problem. She also underwent an ulnar nerve translocation at her left elbow. Both of these operations were performed by Dr. Rask. She was granted permanent partial disability equal to "20% loss use of left forearm and 35% loss of an arm by separation for unscheduled disability" for these injuries.

On March 4, 1968 claimant was employed by Beautique A Go-Go as a maid and delivery person.

---

[1] "All other respects" involved payment for time loss and medical treatment which are not in issue here.

While in the course of her employment she was a passenger in a car which was involved in a serious automobile accident in which claimant was injured. She suffered injury to her low back and right elbow as well as a severe laceration of her forehead. Dr. Rask treated her conservatively at first with physical therapy and injection, but she began developing symptoms suggesting ulnar nerve palsy and Dr. Rask did an ulnar nerve translocation at the right elbow and an epicondylectomy (removal of bone eminence) of the right elbow as well as an ulnar nerve decompression on the right wrist. Later, after a myelogram, Dr. Rask performed a lumbar laminectomy (surgical removal of the posterior arch of a vertebra) at L4-5 and L5-S1, with a nerve root decompression. He also performed a foraminotomy of the L5 nerve root sleeve on the left and a low back fusion from L4 to the sacrum. She again developed difficulty in the right hand with the ulnar nerve and Dr. Rask did a repeat neurolysis (freeing a nerve from adhesions) of the ulnar nerve at the right elbow, a tenotomy (surgical division of a tendon) of the flexor carpi ulnaris insertion at the right wrist, and an ulnar neurolysis in the right wrist and hand. Subsequent X-rays of the fusion area of the low back indicated a pseudoarthrosis (false joint) of her lumbar spine at L4-5. Her treating doctor, Dr. Rask, in November 1971 recommended a second fusion on claimant's pseudoarthrosis, as did Dr. John C. Misko, a neurological surgeon. However, Frederick L. Goodwin, an orthopedist who examined claimant, recommended against further surgery at that time. He saw symptoms (a heavy sensation in the legs) of arachnoiditis (inflammation of the central membrane covering the spinal cord) and recommended conservative treatment and further diagnostic procedures. The hearing officer

did not agree with the doctors who recommended further surgery but found claimant's condition to be medically stationary and after the second hearing closed her claim with his opinion and order of March 15, 1973, which denied permanent total status for the claimant. Originally, however, at the conclusion of the first hearing, the hearing officer found that she was permanently and totally disabled. He said:

"* * * * *

"The last issue is the extent of disability. With claimant's present depressed attitude, education, intelligence and physical impairment, the Hearing Officer can think of no possible job opportunities available to her. She is totally disabled as that term is defined in ORS 656.206. This includes the aggravation of pre-existing emotional problems as allowed by the Court of Appeals in *Patitucci v. Boise Cascade Corporation,* [8 Or App 503, 495 P2d 36 (1972)].

"* * * * * ."

At the second hearing the additional evidence was introduced which included colored snapshots and motion pictures of claimant. About them the hearing officer said:

"* * * * *

"* * * At the rehearing some candid photographs were placed in evidence. Her photograph in Exhibit B shows so much more vitality and personality than was exhibited at the hearing that the Hearing Officer did not believe it was the same person until the claimant acknowledged it to be her photograph. Motion pictures entered into evidence (Exhibits D, E, F and G) also demonstrate the claimant performing various and sundry activities which seemed inconceivable after observing and hearing her testimony at the first hearing. She was able to feed and groom horses and milk a goat. Although guarded in her movements she was able

to climb over fences and bend and stoop as necessary in order to feed and water livestock. Her appearance, conduct, demeanor and behavior at the hearing which was so convincing to the Hearing Officer must be attributed to either good acting, nervous reaction or an excessive dose of tranquilizers. The candid shots clearly show that she has much more on the ball than the Hearing Officer ever suspected.

"* * * * *."

As to his previous finding of permanent total disability, he said:

"* * * * *

"* * * At the previous hearing the Hearing Officer found that claimant was permanently and totally disabled largely because of the depressed attitude which was noted in the medical and psychological reports and which was exhibited at the hearing. Evidence of claimant's vitality and personality in the candid photographs and motion pictures has convinced the Hearing Officer that the depressed attitude exhibited by the claimant at the hearing and before the doctors and psychologists is either a result of very clever acting or, more probably, a nervous reaction to the unfamiliar situation. Claimant is still a young woman and disability should not be based on her age at this time. She has a limited education and below average intelligence but many people are employed for a lifetime with these handicaps and neither of these are a result of the accidental injury. She has physical impairment as noted above and this, as it affects her earning capacity, has resulted in a loss of 35% of her earning capacity. Since she was previously awarded 112 degrees or 35% unscheduled disability this portion of the Determination Order should be affirmed.

"* * * * *."

As opposed to this new finding by the hearing officer, *both* in his *original* and *supplemental* opinions,

with reference to claimant's psychological disorders and impairments, he found:

"* * * * *

"* * * Although she is cooperative with the treating physicians and with the psychologists, she impressed many of them as having a 'flat' affect or a rather dead personality. In this connection see the very comprehensive examination of the Physical Rehabilitation Center, Exhibit 38, of the Back Evaluation Clinic, Exhibit 44, the psychological reports, Exhibits 46 and 47, and Dr. Toon's Medical Discharge Summary, Exhibit 54. Intellectually she tested out in the dull normal to borderline level with both verbal and non-verbal materials. She has an inadequate education and a poor memory rating. The poor memory was evident at the hearing. She tested in the lowest 1% of the female industrial population in the use of her right hand or in the use of both hands in manual dexterity, although she did as well as 52% with her left hand. She has a severe psychopathology that will definitely affect her employability. She is experiencing severe depressive reactions with some anxiety and there is a hint of organic brain damage. Much of this problem pre-existed the accidental injury but it was moderately aggravated by the injury.

"* * * * * *."

The claimant had been referred by the employer to the Physical Rehabilitation Center where she was given examinations and tests, including psychological testing. Included in the Center's report is the conclusion that:

"* * * * *

"* * * The present psychopathology probably represents a moderate aggravation of a pre-existing condition. * * *

"* * * * * *."

The Medical Discharge Summary of the Physi-

cal Rehabilitation Center with reference to psychological classification reported as follows:

"* * * * *

"PSYCHOLOGICAL CLASSIFICATION: Severe psychopathology on the basis of the above evaluation. *The industrial accident is responsible for a moderate aggravation of pre-existing psychopathology.* It is too early to tell if the psychopathology directly due to the industrial accident will or will not be permanent. This will depend a great deal on what is accomplished by long-term psychological counseling.

"* * * * *." (Emphasis supplied.)

It was the consensus of the opinions of the hearing officer and the circuit court that the evidence did not indicate claimant's physical injuries alone, though permanently disabling, rendered her totally and permanently disabled. As the circuit court said:

"* * * * *

"* * * In and of themselves the physical disabilities would not entitle claimant to be placed in the permanent total category * * *.

"* * * * *"

In *Patitucci v. Boise Cascade Corp.,* 8 Or App 503, 495 P2d 36 (1972), a case in which a claimant suffered imposition of a physical injury on an underlying psychological or neurotic problem, we set forth the general rules which are applicable to such cases. We said:

" 'The employer takes the employe as he is. An aggravation by industrial accident of a pre-existing condition is compensable. *Kehoe v. Ind. Accident Com.,* 214 Or 629, 332 P2d 91 (1958); *Keefer v. State Ind. Acc. Commission,* 171 Or. 405, 135 P2d 806 (1943).' *Watson v. Georgia-Pacific Corp.,* 5 Or App 353, 356, 478 P2d 431, 484 P2d 1115 (1970).

It is not necessary that the accidental injury be the principal cause of the disability. It is sufficient if it contributed to claimant's disability.

> " 'Under the purposes to be accomplished in social welfare by the enactment of the Workmen's Compensation Acts, we are of the opinion that the law does not weigh the relative importance of the several causes that bring about the injury—it is sufficient if the accident occurring through employment is a contributing cause of the result. 1 Larson's Workmen's Compensation Law 50, Categories of Risk § 7.40.' *Kehoe v. Ind. Accident Com.*, 214 Or 629, 637, 332 P2d 91 (1958).

> "If the contribution is minimal or *de minimis,* for example, if claimant would have become disabled by psychological developments at the same time, whether she was involved in an industrial accident or not, then the accident would not be deemed to have contributed to the disability. * * *" 8 Or App at 507.

The hearing officer obviously applied the above law in finding that her physical disability and her psychopathology were causally related, not minimally but, to use his words: "[Her psychopathology] was moderately aggravated by the [accidental] injury." He originally found that she was "unemployable in any gainful or suitable occupation." As mentioned, in the second hearing he also found permanent physical and psychological impairment but concluded on the basis of the photographs and several rolls of film taken of claimant by a private investigator that she was not permanently and totally disabled.

■ We have viewed the photographic evidence, as did the hearing officer and the circuit court. In our view the pictures do not in any serious sense contradict claimant's position. As noted above, claimant's

physical impairment would not render her permanently and totally disabled. The fact that she was able to perform some physical tasks, and to do so apparently cheerfully, does not remove from existence the psychological impairments[2] with which she was found to be burdened.

---

[2] The following excerpts taken from reports of psychological evaluation, Physical Rehabilitation Center, Workmen's Compensation Board, Exhibits 46, 47, dated November 9, 1971.

"* * * * *

"Impression: The psychological evaluation reveals that this patient presently is functioning at a dull normal to borderline intellectual level with both verbal and nonverbal materials. There is evidence of a general educational deficiency together with a significant reading disability. The patient is exhibiting some visual motor problems and is having difficulty with new learning. Her performance on the tests in the brain damage series provides objective evidence suggestive of organic brain damage or disease. However, there is no doubt that the patient's emotional condition is interfering significantly with her intellectual performance. This woman feels that she will not be able to return to her former type of work and is expressing an interest in vocational rehabilitation. She will require a great deal of educational and vocational counseling and even then her vocational rehabilitation will be difficult because of her limited aptitudes and her severe emotional condition. This woman presently is exhibiting severe depressive reactions together with some anxiety and rather extreme preoccupation with a multitude of physical and emotional complaints. There is also evidence of schizophrenic reactions of an undifferentiated type. This woman has previously been hospitalized for what appears to have been a schizophrenic reaction. It is very clear that emotional factors are significantly interfering with this patient's restoration and rehabilitation and it seems probable that her emotional condition will interfere with her future job possibilities.

"Classification: 5 on the basis of the above impression. This patient probably should be considered psychotic at the present time although there is no reason to believe that she is dangerous to herself or to others. There probably is some remission of symptoms at the present time as no evidence of delusions or hallucinations could be elicited. However, there is significant disturbance of her thought processes. There is no doubt that most of this psychopathology is chronic and of long duration. The present psychopathology probably repre-

■ While we give weight to the hearing officer's findings on his determination of the credibility of witnesses who appear before him, we do not find that to be the issue here. The hearing officer found the same "flat" appearance of the claimant at both hearings. It is his interpretation of the pictures and movies which made the difference to him. About them he observed in his supplemental opinion:

"* * * * *

"* * * The candid shots clearly show that she has much more on the ball than the Hearing Officer ever suspected.

"* * * * * *"

■ We agree with the trial court's refutation of the hearing officer's interpretation of this evidence. We quote from the court's opinion:

"* * * * *

sents a moderate aggravation of a pre-existing condition. At this point it is difficult to determine whether this patient will suffer permanent psychological disability although that possibility certainly exists.

"Prognosis: The prognosis for restoration and rehabilitation in this instance is poor. The extent and nature of the psychopathology here certainly interferes with the patient's restoration and rehabilitation. Whether her emotional status will change significantly may depend somewhat on what treatment she receives."

and

"* * * * *

"Although this patient made rather remarkable progress as far as her general affect is concerned, there is no reason to believe that her very serious emotional problems have been solved. She is merely functioning in a less withdrawn pattern, but she is certainly no less emotionally disturbed. It is strongly recommended that whoever has contact with this patient urge her to seek further counseling at the mental health clinic. She is in need of long term psychotherapy, and in fact this need is desperate. Without such psychotherapy, this patient will likely become institutionalized within a relatively few years."

"After a careful review of this entire record it is my opinion that the original decision of the hearing officer is the correct one and that the claimant is permanently and totally disabled. Considering claimant's mental capacity, education and training together with her physical disabilities and aggravated psychological problems, I believe she is permanently incapacitated 'from regularly performing any work at a gainful and suitable occupation.'

"In doing so I do not quarrel with the observations of the hearing officer concerning the difference in claimant's demeanor at the hearings when contrasted with the pictures and movies. The movies which I have observed on two occasions, do reveal that the claimant is able to move about with some animation, at least a good deal more than she apparently evidenced at the hearings. As noted by the hearing officer she moves in a guarded manner indicating that her physical problems have not alleviated themselves. In my opinion the activities of the claimant as pictured in an outdoor setting are entirely consistent with the reports of the psychologist and I find such reports very persuasive, as the hearing officer did originally.

"The order of the hearing officer of March 15, 1973 is affirmed in all respects except that this Court finds that claimant is entitled to an award of permanent total disability and therefore the permanent partial awards are no longer appropriate."

Affirmed.