Argued January 21, reversed February 18, 1975

# D. R. JOHNSON LUMBER COMPANY, *Appellant,* *v.* STATE ACCIDENT INSURANCE FUND ET AL (No. 39460), *Respondents,* WEST, *Claimant-Respondent.*

532 P2d 38

420

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and Robert E. Joseph, Jr., Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents State Accident Insurance Fund and L. Michaels Ranch. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Evohl F. Malagon,* Eugene, argued the cause and filed the brief for claimant-respondent Troy West.

Before LANGTRY, Presiding Judge, and FORT and THORNTON, Judges.

FORT, J.

Troy West was injured on January 5, 1968, while working for D. R. Johnson Lumber Company. The accident resulted in a knee injury which occurred while claimant was employed as a faller and bucker when he slipped on an icy log. The claim was accepted and subsequently closed on July 26, 1968, with no award for permanent partial disability. Argonaut Insurance Companies carried the insurance coverage for the employer at that time.

During the four and one-half years following that accident claimant engaged in a number of occupations in several states, most, if not all, of which involved hard manual labor, including among them further employment as a faller and bucker. At no

time during this period did the prior knee injury cause him to lose time from his various jobs.

On August 17, 1972, he was employed as a faller and bucker by L. Michaels Ranch, and on August 18, while engaged in falling a tree, again sustained an injury to that knee. The State Accident Insurance Fund, hereinafter called SAIF, was the insurer for the latter employer.

Claimant asserted by separate claims that his 1972 injury constituted either a new injury, rendering SAIF and L. Michaels Ranch responsible, or an aggravation of his 1968 injury, imposing responsibility upon Argonaut Insurance Companies and D. R. Johnson Lumber Company. Both employers rejected his claim, Argonaut contending that the 1972 accident amounted to a new injury and SAIF asserting it to be an aggravation. The referee determined that the 1972 accident constituted a new injury and imposed liability upon Michaels. The Workmen's Compensation Board affirmed the referee. The circuit court reversed and held the second injury an aggravation of the first. D. R. Johnson Lumber Company appeals.

Realistically, the question presented is which of the two insurance carriers, Argonaut or SAIF, must bear the compensation costs for claimant's present injuries. It is not disputed that one of the two must do so. On this appeal it is the contention both of appellant, D. R. Johnson Lumber Company, and claimant-respondent, West, that respondent L. Michaels Ranch and thus its insurer, respondent SAIF, must bear the cost.

The latter two contend that since the reality of

his present condition is that it is the result of an aggravation of the 1968 injury, the loss must be borne by appellant. They rely on ORS 656.271.[1] We note that statute was replaced by Oregon Laws 1973, ch 620, § 5, and now appears as ORS 656.273.[2] Former ORS 656.271(1) read in part:

"If subsequent to the last award or arrangement of compensation *there has been an aggravation of the disability* resulting from a compensable

---

[1] We note this statute was repealed by Oregon Laws 1973, ch 620, § 4.

[2]

"(1) After the last award or arrangement of compensation, an injured workman is entitled to additional compensation, including medical services, *for worsened conditions resulting from the original injury.*

"(2) To obtain additional medical services or disability compensation, the injured workman must file a claim for aggravation with the State Accident Insurance Fund or the direct responsibility employer. In the event the direct responsibility employer cannot be located, is unknown, or has ceased to exist, the claim shall be filed with the board.

"(3) (a) Except as provided in paragraphs (b) and (c) of this subsection, the claim for aggravation must be filed within five years after the first determination made under subsection (3) of ORS 656.268.

"(b) If no determination was made, the claim for aggravation must be filed within five years after the date of injury.

"(c) If a nondisabling injury did not become disabling within at least one year from the termination of medical services, the claim for aggravation must be filed within five years from the date of injury rather than the date of any determination issued in the claim.

"(4) The claim for aggravation must be supported by a written opinion from a physician that there are reasonable grounds for the claim. The board may, in its discretion, order the claimant, the State Accident Insurance Fund or the direct responsibility employer to pay for such medical opinion.

"(5) A request for hearing on any issue involving a claim for aggravation must be made to the board in accordance with ORS 656.283." ORS 656.273. (Emphasis supplied.)

injury, the injured workman is entitled to increased compensation including medical services *based upon such aggravation.* * * *"* (Emphasis supplied.)

In *Keefer v. State Ind. Acc. Commission,* 171 Or 405, 135 P2d 806 (1943), the Supreme Court discussed the meaning of the term "aggravation" as used in the then existing Act,[9] stating:

"The 'aggravation of disability' mentioned in subsection *c* of § 102-1771, O. C. L. A., *refers to the course or progress of the workmen's condition resulting from the specific injury for which an 'award or arrangement of compensation' has been made.* It applies to cases in which the disability proves to be greater than supposed when the order was made closing the case. The subsection has no bearing on the condition of the workman's health resulting from a further accident, whether compensable or not." (Emphasis supplied.) 171 Or at 410.

Prior to the 1973 Act, the statute referred to "an aggravation of the disability," whereas the 1973 amendment eliminated that phrase and in lieu thereof inserted the right to "additional compensation * * * for worsened conditions resulting from the original injury."

We think the 1973 amendment amounts to a clear declaration of legislative policy that the meaning of "aggravation" announced in *Keefer* still governs the

---

[9] "(c) [Aggravation of injury.] If subsequent to the last award or arrangement of compensation by the commission there has been an aggravation of the disability resulting from an accidental injury, the injured workman may file with the commission an application for increased compensation, which application shall set forth sufficient facts to show an aggravation in such disability and the degree thereof. * * *" § 102-1771, OCLA.

processing of claims under ORS 656.273, as well as former ORS 656.271.

The essential question here, however, is whether or not the facts establish an "aggravation" of the 1968 injury or whether his condition was the result of the 1972 on-the-job injury.

The attending physician who performed the surgery in 1972 on claimant wrote a letter to SAIF, received in evidence, which stated:

"This is in response to your inquiry concerning Troy West's knee problem for a clarification on whether or not his present episode was related to his injury of 1968.

"Obviously, I can only express an opinion based on the history and the findings presented. According to my notes, the episode for which I evaluated him was on August 18, 1972. I performed surgery on August 29, 1972, a period of some eleven days. You will note the operation report describes an old, complete tear of the anterior cruciate ligament. That is, it definitely had been torn earlier than eleven days prior to his surgery. The chronic scarring and changes present in those ligament stubs indicated a much longer duration. How much longer is conjecture.

"The patient's history as presented on evaluation is compatible with the findings of surgery on August 29, 1972 in reference to pain or popping when he steps on irregular ground or descending stairs or trying step-walking maneuvers on initially rotating the femur on the fixed tibia. He states those symptoms have been present since the original injury. He finally decompensated when the torn meniscus locked.

"I cannot be any more specific in causal relationship than this, and any further opinion is a judgment matter.

"I hope that this will be of some help in clarifying this for you."

It was primarily on the basis of this letter that SAIF rejected the claim for the 1972 injury.

The referee after hearing found:

"* * * The evidence in this case does not indicate a deterioration in claimant's knee condition resulting from the functional changes caused by the January 1968 injury, but rather the result of a new injury, although to the same area of the knee, which resulted in more painful and disabling symptoms. * * *"

■■ It is elementary that under the Workmen's Compensation Law the employer takes the workman as he finds him. *Keefer v. State Ind. Acc. Commission,* supra. We agree with the referee that the evidence does not establish within the meaning of ORS 656.-273(1) "worsened conditions resulting from the original injury." Rather, it establishes that the condition resulting from the 1968 injury in terms of disability for employment or other activity during the intervening four and one-half years remained substantially unchanged. It was the accident of August 1972, which occurred while he was falling a 30-inch tree on sloping ground and engaged in shifting a 25 pound power saw to effect a cut in a different location on the tree, that resulted in the injury for which compensation is here sought. ORS 656.002(7)(a) provides in part:

"* * * [A]n injury is accidental if the result is an accident, whether or not due to accidental means."

Manifestly this was such an injury.

Reversed.