Argued October 27, affirmed December 13, 1976

# MINNESOTA MINING AND MANUFACTURING CO., *Appellant,*

*v.*

# STATE ACCIDENT INSURANCE FUND et al, *Respondents.*

## (No. 76-770-E-3, CA 6657)

556 P2d 1379

*Merlin L. Miller,* Portland, argued the cause and filed the brief for appellant.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent State Accident Insurance Fund. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance by respondent Helen M. Prince.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

A dispute between two insurance carriers as to which of them must bear the costs of the claimant's present disability is the crux of this workmen's compensation case. In order to resolve that dispute this court must, in effect, determine whether claimant's existing disability is attributable, wholly or in part, to a compensable injury suffered by her in June 1974 while she was employed by Minnesota Mining and Manufacturing Co. (3M).

Having considered the testimony of the claimant and all relevant medical evidence, the referee concluded that her low back problem reflected a "general worsened condition" stemming from an injury suffered by her in October 1973 while employed by Nu-Way Cleaners; he accordingly ordered the State Accident Insurance Fund (SAIF), Nu-Way's compensation carrier, to accept claimant's aggravation claim.[1]

That order was subsequently reversed by the Workmen's Compensation Board which noted that during the interval between claimant's first and second injuries she had been able to work regularly at the type of job which might be expected to aggravate a deteriorating low back condition and concluded that there was, in fact, a causal relation between claimant's ultimate disability and the 3M injury incurred on June 22, 1974. Exercising its own de novo review, the circuit court thereafter affirmed the Board's order holding Travelers Insurance Company, 3M's compensation carrier, to be the responsible insurer.

Our own review of the record indicates that claimant's initial compensable injury, that sustained on October 11, 1973, was to her "low-back" and that her symptoms following that injury included pain radiating into and numbness of her right leg. On December

[1]The referee had presided over a consolidated hearing requested by claimant as a result of (1) 3M's partial denial of her Workmen's Compensation claim and (2) SAIF's denial of an aggravation claim filed by her on April 3, 1975.

3, 1973 surgery was performed to alleviate claimant's continuing low back and leg pain. Although that procedure was successful to the extent that it enabled claimant to regain a full range of low back motion, she apparently continued to experience some persistent mild to moderate pain in her lower back.

Claimant was, however, released for work without restriction on April 1, 1974 and, thereafter, began working for 3M on April 30. Between the date of her employment and June 22, 1974, claimant performed the various tasks assigned to her, including the lifting, stacking, and pushing of bundles of paper and the packing of materials into boxes, without difficulty despite the residual effects of her previous injury.[2] On June 22, 1974, however, claimant removed from a storage shelf a bundle weighing substantially more than those she was normally required to handle; she carried that bundle some 100 feet, bent over to place it underneath a piece of machinery at her work station, and immediately felt what she described as "intense pain" located centrally above and below her waist and running down into her low back. Claimant completed her shift that day but did not return to work on June 23.

On June 24, 1974 claimant was examined by Dr. Dysart who discovered a "marked limitation of motion of the dorsal spine and pain with attempted motion," and who diagnosed her injury as "acute dorsal sprain." A second physician, Dr. Sickels, examined claimant on June 25, 1974 and diagnosed her injury as a "strain in the lower back."

Following a course of conservative treatment for her "new" injury, claimant was released to return to work at 3M on July 24, 1974 with the restriction that she not handle items over 20 pounds in weight. Claimant thereafter maintained a steady record of

---

[2]On June 21, 1974 claimant had been given a "pre-employment" physical examination which indicated that she had "essentially a full range of motion of the lumbar spine."

employment until the first or second week of September when increasingly severe low back pain prevented her from performing satisfactorily. No new incident had marked the onset of the pain which forced claimant to leave 3M; rather, the pain had become gradually worse over a period of approximately one week. Subsequent to her separation from 3M, claimant was referred to Dr. Weinman who eventually performed additional low back surgery in January 1975.

Travelers Insurance concedes that claimant suffered a compensable injury on June 22, 1974 for which it is responsible; it did, in fact, accept a claim filed in July 1974 for the treatment required by claimant prior to her return to work on July 24. It argues, however, that the "mid back or dorsal spine strain" for which it accepted responsibility was *unrelated* to the low back condition which resulted in the surgery performed by Dr. Weinman. In effect, Travelers takes the position that the condition necessitating claimant's most recent surgery was a "continuation" of the injury suffered in October 1973 and is, therefore, the responsibility of SAIF.

In *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976), this court recently restated what has come to be the accepted rule in cases involving successive accidents covered by different insurance carriers:

> " 'The "last injurious exposure" rule in successive-injury cases places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.
>
> " 'If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases * * * in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. This group also includes the kind of

case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

" 'On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition.' " (4 Larson, Workmen's Compensation Law 17-71—17-78, § 95.12 (1976).) 27 Or App at 364-65.

Shortly after his initial examination of claimant, Dr. Weinman had informed Travelers that her back problems had been "exacerbated by her injury of June 22, 1974" specifically indicating that her dorsal sprain was related to a "muscle spasm from aggravation of her lumbar spine." In summary, Dr. Weinman offered the opinion at that time that claimant's "over-all current condition is caused by a combination of her original injury of October 1973, with aggravation by the lifting episode of June 22, 1974." Subsequent to the surgery performed by him in January 1975, at a time when Travelers had taken the position that it was not responsible for that treatment, Dr. Weinman provided them with the unequivocal opinion that the June 22, 1974 injury itself had served to "aggravate" claimant's preexistent condition and that her hospitalization and subsequent treatment had been necessary as a result of the aggravating effect of that injury. In a final communication with Travelers, Dr. Weinman indicated that he could not say, as the Company had suggested, that the June 22 incident had not had some effect on claimant's lower back. No medical opinions whatsoever were offered by Travelers in support of the view that the lower back condition which had resulted in the surgery by Dr. Weinman was not attributable, even in part, to the injury claimant suffered while employed by 3M.

[ 752 ]

We believe the preponderance of the evidence does suggest a "causal relation" between claimant's ultimate disability and the injury which occurred on June 22, 1974. Prior to that date claimant's condition, although not completely asymptomatic, had been relatively stable; the injury suffered on June 22, 1974 appears to have precipitated the deterioration of her low back condition which led ultimately to the surgery of January 1975. Under these circumstances, Travelers, as the compensation carrier at the time of that injury, is the responsible insurer. *See Smith v. Ed's Pancake House, supra; Johnson Lbr. Co. v. SAIF,* 20 Or App 419, 532 P2d 38 (1975); *Cutright v. Amer. Ship Dismantler,* 6 Or App 62, 486 P2d 591 (1971); *cf. Gardner v. Underwriters Adj. Co.,* 27 Or App 433, 556 P2d 710 (1976); *Calder v. Hughes & Ladd,* 23 Or App 66, 541 P2d 152 (1975).

Affirmed.