Argued and submitted October 24,
reversed and remanded December 10, 1979

## WILBURN,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND,
*Respondent.*

### (WCB No. 78-123, CA 14697)

603 P2d 1220

Robert K. Udziela, Portland, argued the cause for petitioner. On the brief were Dan O'Leary, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The principal issue in this workers' compensation case is the extent of the claimant's disability. The claimant contends that he is permanently and totally disabled. We agree.

The claimant suffered a compensable injury in 1971 when the edge of a landfill collapsed from under the garbage truck he was driving. The truck, with claimant still inside the cab, fell some 25 or 30 feet to the bottom of the landfill. Claimant suffered a concussion, deep scalp lacerations, cervical strain and an inguinal hernia. He was treated at a hospital emergency room, then released. The next day, however, claimant returned to the hospital because he was hallucinating and confused. Four days later, claimant regained his senses and was discharged.

As a result of the accident, claimant suffered permanent disability to his neck. Although the pain and limited motion resulting from this disability initially prevented the claimant from returning to work, the medical reports indicate that ultimately the neck strain produced only minimal permanent physical disability.

But claimant's physical impairment in this case is only the tip of the iceberg. Since the accident, and beginning with the hallucinatory period which followed it almost immediately, claimant has become increasingly paranoid and depressed. He has experienced psychotic episodes which have, on occasions, required hospitalization. During one such episode, a treating psychologist had to talk claimant out of the corner of a small storage room of his house where he had hidden. In 1978, on admission to the mental health unit of a hospital, claimant threatened suicide during the initial interview and attempted to jump through a window.

The claimant, now 51, has an I. Q. of 66, left school after the 9th grade and is functionally illiterate. His

work experience has been limited to truck driving, and some logging and work in a sawmill. The claimant has poor manual dexterity. Notwithstanding his severe limitations,[1] claimant, prior to the accident, had been self-supporting since 1956, and had worked for the same employer for seven years up to the time of his injury. The record supports the conclusion that his inability to return to the only type of job he had been able to perform had a substantial effect on the development of his psychosis, characterized as paranoid schizophrenia, depressive reaction.

The claimant also suffers from seizures. An opinion and order, entered earlier in the prolonged history of this case, determined that claimant's seizures were not the compensable result of his on-the-job injury. There was no appeal from this order, so it is *res judicata.* The same order also determined that claimant's psychiatric problems were compensable and that he was not medically stationary; further care and treatment were ordered, the alternative being "a finding of permanent total disability."

Claimant has done little work since his injury. He has sought work as a garbage collector with no success. He has attempted vocational rehabilitation but has been handicapped by his lack of skills and education, and by his psychological problems. While hospitalized at the University of Oregon Medical School, the claimant tried on-the-job training as a groundskeeper, but he was not hired.

Claimant received an award of 10 percent unscheduled permanent disability for his neck strain. This award was affirmed by a referee after hearing, and by the Workers' Compensation Board, with one member dissenting on the ground that claimant was permanently and totally disabled.

---

[1] The claimant suffers from osteoarthritis in his spine which precludes his working at any occupation involving repetitive bending or heavy lifting.

In affirming the 10 percent disability award, the referee relied on the opinion of a psychiatrist who saw the claimant once at the request of SAIF. This psychiatrist found that the claimant had some psychological disability, and that the disability was related to the injury, but the doctor felt that the disability would not prevent the claimant from working. In his opinion and order, the referee also suggested that the claimant's seizures, rather than his physical and psychological problems, kept him from returning to work. Finally, the referee found that the claimant's "credibility [was] questionable because of his exceedingly poor memory."

Our review of the record indicates that the referee relied primarily on the report submitted by the psychiatrist who saw claimant once at SAIF's request, before the most dramatic of claimant's psychotic periods. The record, however, also includes reports from a psychologist who treated the claimant over an extended time period, and a psychiatrist who saw claimant during and after an acute psychotic, suicidal episode. This psychiatrist also testified at the hearing. Both the treating psychologist and treating psychiatrist emphasized that claimant's emotional problems were triggered by the industrial accident, that the psychological disability is permanent and that it is total. At the hearing, the psychiatrist stated that he "thought [the claimant] was barely able to keep himself together and to tend to his own needs let alone get up in the morning at a specified time and go out to work and do something for someone else, and fulfill their expectations." We conclude that this other evidence is more persuasive.

While the claimant's seizures may contribute to his inability to work, neither the reports of the treating doctors, nor the other evidence in the file, suggests that the seizures are the sole, or even a major cause of the claimant's failure to seek or obtain work. At most, the evidence indicates that the claimant may believe

that the seizures prevent him from working or discourage employers from hiring him, but this belief appears to originate in the claimant's paranoia.

While we tend to defer to a referee's finding on witness credibility, *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 192, 471 P2d 831, 476 P2d 931, (1970), *rev den* (1971), the claimant's credibility in this case is of little relevance to our decision on the extent of disability. This is not a case which turns upon the accuracy of the claimant's description of his physical limitations. This claimant's most severe disability consists of pronounced mental problems precipitated by his compensable injury. It is unrealistic, if not absurd, to expect claimant to be an accurate observer of, and reporter with respect to, his own psychosis. An emotionally disturbed, mentally retarded claimant may not reasonably be expected to demonstrate a reliable memory.

Permanent total disability is that "which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation * * *. [A] suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which he is able to perform after rehabilitation." ORS 656.206(1)(a).

We hold that this claimant is permanently and totally disabled. His minimal physical disability is coupled with a profound psychological disability. The claimant is retarded, has few skills and little education. He labored under severe limitations before his injury. The injury has left him totally disabled. *See Patitucci v. Boise Cascade Corp.,* 8 Or App 503, 495 P2d 36 (1972); *Haugen v. Beautique A Go-Go,* 18 Or App 132, 524 P2d 553 (1974).

Under ORS 656.206(3), claimant has the burden of proving that he is "willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment." The claimant has carried

this burden: he has looked for work and has attempted vocational rehabilitation. While the record contains some references to the claimant's desire to avoid work, these references must be evaluated in the distorting light of the claimant's psychosis. In periods of suicidal depression, apparently the claimant sometimes has said that he does not want to work. However, the statute requires only "reasonable efforts" to obtain employment. In more lucid moments, the claimant has made such efforts. More cannot reasonably be expected from a man who is "barely able to keep himself together."

One final issue remains: the parties disagree as to whether claimant is entitled to temporary total disability and to the payment of medical expenses for a period when claimant was hospitalized in 1978. The referee held that the hospitalization was related to the claimant's seizures and that he was not entitled to compensation. Our review of the record indicates that some of the treatment and time loss may have been the result of the noncompensable seizures, but that claimant was also treated at that time for his psychosis. However, we are unable to segregate the compensable expenses from those related to the noncompensable seizure condition. Accordingly, we remand to the Board to make this determination.

Reversed and remanded with instructions to enter a new order determining claimant to be permanently and totally disabled, and for further proceedings consistent with this opinion.