LUMBERMEN'S MUT. CAS. CO. *et al. v.* DEDMON.

*(Knoxville,* September Term, 1951.)

Opinion announced December 14, 1951.
Designated for publication Feb. 22, 1954.

HODGES & DOUGHTY, of Knoxville, for plaintiff in error.

DEXTER A. CHRISTENBERRY and ROBERT T. MANN, both of Knoxville, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

William Dedmon was killed in a street traffic accident in Morristown where he had gone on the business of his

employer, National Hardwood Lumber Association. As a result, his widow instituted this suit under the Workmen's Compensation Law. The sole question is whether the injury and death of Mr. Dedmon arose out of and in the course of his employment and, therefore, compensable under our Workmen's Compensation Statute. The Circuit Court so held. The employer and its insurer have appealed.

Mr. Dedmon was a lumber inspector for his employer. His duties made it necessary that he travel from town to town and remain in each of such towns for several days. During such stay he stopped at hotels. He traveled in his own automobile. He was reimbursed by his Company for expenses thus incurred, including mileage in using his car, his meals and hotel bill. He procured his meals and stopped at such hotels as he desired in whatever town his duties might take him.

During each day, when weather conditions permitted, Mr. Dedmon inspected lumber from 8 or 9 a. m. until 4 or 5 p. m. at whatever lumber yard he happened to be working. It was likewise his duty to prepare certain reports and certificates with reference to the lumber which he had inspected. It was necessary that he prepare these reports after the end of his day's work. It required a maximum period of one and one-half hours to make these reports. He was expected to prepare these in his hotel room. It was also necessary that he be available during the night to a telephone, since he was frequently called at night over long distance by his employer and frequently by phone communicated with his subordinates. These conversations took place, on his part, from his hotel room.

The lumber yard of the company in Morristown whose lumber he was inspecting during the stay involved here

was located on Main Street. The hotel at which he was staying was located on that same street eight blocks west of the lumber yard. A restaurant in Morristown known as Whitty's Cafe was likewise located on the North side of Main Street in the downtown section between the lumber yard and the hotel. Thus, the most direct route for Mr. Dedmon to take after his day's work at the lumber yard was west down Main Street to Whitty's Cafe, if he intended to eat there; hence, continuing west on Main Street to his hotel.

Mr. Dedmon was an enthusiastic fisherman and often indulged in that sport. He possessed considerable fishing equipment, and carried it in his car.

In the afternoon of January 25, 1949, which was the day before the traffic accident in which he was killed, the rain in Morristown prevented Mr. Dedmon from inspecting lumber that afternoon. So, he went fishing in a nearby lake with a Mr. Coffey. Mr. Coffey had some fishing boots which Mr. Dedmon liked so much that he unsuccessfully sought to buy them. Then, in response to his inquiry, he was told by Mr. Coffey that the boots were purchased at the H & H Service Station which consisted of three stores, one of these being a store that sells fishing equipment. Mr. Dedmon also had in his car on that day a new type fishing reel which he seemed to prize.

Main Street in Morristown runs East and West, and is intersected by James Street running north and south. Whitty's Cafe is on the north side of Main Street just west of its intersection with James Street. The above mentioned H & H Service Station and its sporting goods store is located on the southeast corner of the intersection of Main and James Street, and faces Main Street. Therefore, this sporting goods store was diagonally across Main

Street from Whitty's Cafe, and a maximum of 200 feet east of this cafe.

On the day of the accident, January 26, Mr. Dedmon left the lumber yard at 4:45 P. M. About 5 o'clock he began a visit with a Mr. Bernard at the latter's office almost directly across the street from Whitty's Cafe. Mr. Dedmon's car was at that time parked on the north side of Main Street headed west, and was practically in front of Whitty's Cafe. It was parked at that same place after the accident occurred. Mr. Dedmon and Mr. Bernard engaged in conversation for approxmately thirty minutes. About 45 minutes thereafter Mr. Bernard heard about the accident which occurred at approximately 6:20 P. M. During the conversation with Bernard Mr. Dedmon invited Bernard to go to dinner with him that evening at Whitty's Cafe. The invitation was declined.

Other than the circumstances immediately above related there is no evidence as to whether Mr. Dedmon had eaten his dinner at Whitty's Cafe, or anywhere else, between the conclusion of his conversation with Bernard about 5:30 and the time that he appeared in the aforesaid H & H Service Station some few minutes after 6 o'clock. Mr. Harrell, the owner of the H & H Service Station, testified that on the evening of January 26 Mr. Dedmon came in his store and, while looking over the fishing equipment entered into a conversation with Harrell about the new type reel that he, Dedmon, owned. Thereupon, Dedmon left the store and went across Main Street to his automobile parked in front of the restaurant and got this reel and brought it across Main Street into this store room of H & H Service Station and showed it to Harrell. Then he left with his reel, and a few minutes later Harrell learned that he had been struck by an automobile in Main Street in front of H & H Service Station.

An eyewitness to the accident testified that he noticed Mr. Dedmon start across Main Street, and then stopped to permit a car bound east on that street to pass; that Mr. Dedmon then stepped from behind the eastbound car directly into the path of a car traveling west on Main Street and was run over. This witness rushed to the aid of Mr. Dedmon, who gave him his fishing reel and his car key with the statement that his car was in front of the Whitty's Cafe with valuable papers in it. He wanted it locked. A policeman who came up fixed the time of this accident at 6:20 p. m. Mr. Dedmon died that night.

■ The Trial Judge wrote a very painstaking and able opinion and found that the visit of Mr. Dedmon to the H & H Service Station was a

"purely personal mission—the purpose of which was to look at the fishing equipment, to discuss fishing with Mr. Harrell, and to exhibit his new reel. This clearly appears to have been his only purpose in departing and it was definitely personal. The errand cannot be related to any duty that he was required to perform for his employer".

The evidence clearly supports that conclusion, and none other.

■ When the duties of an employee require travel, as in the instant case, injuries received as a result of hazards incident to such travel are compensable. *Central Surety and Insurance Corporation* v. *Court,* 162 Tenn. 477, 36 S. W. (2d) 907. If, however, during such travel the employee makes a detour for a mission that is solely personal, injuries received by the employee while so detouring are not compensable, because that portion of the trip is not related to the service of the employer. *American Casualty Co.* v. *McDonald,* 166 Tenn. 25, 57

S. W. (2d) 795. Obviously, it is the rule with reference to such detours that we must deal in the present case.

■ The Trial Judge, in concluding that the accident which befell Mr. Dedmon was one that came within the terms of the statute, said this:

"The most logical conclusion to be drawn from these circumstances is that his ultimate destination that evening was the hotel and that his immediate objective was the car, since he had his reel and car keys in his hands as he prepared to cross the street. So on foot he arrived at and was in Main Street just before he was struck down. He was therefore at a place at a time where in the course of his employment he was required to be in performing one of the duties incident to it, namely traveling on the natural, most direct route between the two places, plant and hotel, where his several duties were performed."

We think all the evidence is contrary to the conclusion of the Trial Judge that Mr. Dedmon at the time of the accident was

"at a place at a time where in the course of his employment he was required to be in performing one of the duties incident to it."

Mr. Dedmon was at the place where he was struck at the time he was struck solely because of the personal mission which he had undertaken. Except for the fact that he undertook this personal misson in no way related to the duties of his employment he would not at the time have been at the place where he was struck. With the utmost deference to the learned Trial Judge, we are very positively of the opinion that the evidence permits no other conclusion.

The starting point of Mr. Dedmon's detour was his car. The terminus of the trip which he was taking on a solely personal mission was the H & H Service Station. The opinion of the Trial Judge, and it is the insistence made in behalf of the widow, was that the trip of Mr. Dedmon from the starting point (the car) to the terminus (H & H Service Station) was a detour but that the return trip from the terminus to the starting point was not a part of the detour within the meaning of the statute. This definition of a detour is not in accord with the rule adopted by this Court. In our case of *American Casualty Co.* v. *McDonald,* supra, 166 Tenn. at page 28, 57 S. W. (2d) at page 796, the rule, quoting from a Wisconsin case [*Barragar* v. *Industrial Commission,* 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679], is stated as follows:

"Having determined that it was the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while enroute to, or *returning from,* the terminus of his trip." (Emphasis supplied.)

The above rule thus stated in the McDonald case controls the case at bar. On principle, this rule is very sound. Otherwise, the employer would be subjected to hazards not contemplated while the employee, on a solely personal mission, is returning from the terminus of the mission to the point where the detour began.

It is true that the deviation was slight in so far as distance is concerned, but in making such deviation Mr. Dedmon exposed himself to a hazard in no way connected with his employment and thereby was killed. To illus-

trate how strictly the Courts follow the rule that there is no liability in such a situation under the Workmen's Compensation Statute, Chief Justice Green in *Toombs* v. *Liberty Mutual Insurance Co.*, 173 Tenn. 38, 42, 114 S. W. (2d) 785, refers to an Indiana case [*In re Betts,* 66 Ind. App. 484, 118 N. E. 551] where the employee had left his place of employment to get some tobacco for himself. He was not allowed a recovery for injuries received while on that trip. Another illustration is the Michigan case of *Sichterman* v. *Kent Storage Co.,* 217 Mich. 364, 186 N. W. 498, 20 A. L. R. 309. There the traveling salesman while traveling on the business of his master in his automobile stopped to assist some person who had been hit by a passing car. In performing this act of mercy the salesman himself was hit and killed by another passing car. A recovery was not allowed. In the California case of *Northwestern Pacific Railroad Co.* v. *Industrial Accident Commission,* 174 Cal. 297, 163 P. 1000, L. R. A. 1918A, 286, the traveling employee alighted from the train to assist an unknown individual who had fallen and injured himself while getting on the train. This employee, in starting to get back on the train, likewise slipped and was killed. A recovery was not allowed. Of course, the reason for the result in each of these cases was because the employee had exposed himself to a hazard entirely unrelated to his employment.

Counsel thinks that the widow's petition in this case can be sustained under the holding in *Employers' Liability Assur. Corporation* v. *Warren,* 172 Tenn. 403, 112 S. W. (2d) 837. Of course, each case must be controlled by its own facts. The controlling facts in the Warren case are so different from those in the instant case that it is

impossible for us to sustain the widow's petition under the authority of that case.

Mr. Warren was in his hotel for the performance of a duty there to his employer, to-wit, do certain work with another employee at that time and place for his employer. It was while awaiting there pursuant to his duty for the arrival of this second employee that there occurred the accident resulting in the death for which compensation was allowed.

The accident in the case at bar was most tragic in its results both to Mr. Dedmon and his widow, but it is not possible to relate the detour during which the accident occurred with the service of the employer. It follows that the judgment of the Circuit Court must be reversed and the petition dismissed with costs adjudged against Mrs. Dedmon.