Argued May 20, reversed and remanded with instructions to reinstate the order of the referee September 26, reconsideration denied November 16, 1977, petition for review denied April 25, 1978

WOOD, *Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Appellant.*
(No. A7609-13433, CA 7711)
569 P2d 648

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Kenneth D. Bourne, Portland, argued the cause and filed the brief for respondent.

Before Thornton, Presiding Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The issue in this worker's compensation case is whether claimant's injury, which occurred during a vocational retraining course, is compensable and, if so, which of three employer's accounts is chargeable with the compensation.

Claimant, while employed by Chappell-Spears, as a trailer serviceman, suffered a low back injury in 1973. This was determined to be a compensable injury. His claim was subsequently closed and he received an award of temporary total disability and 25 percent permanent partial disability. Following the injury he terminated his employment with Chappell-Spears. The treating physician recommended he not return to a job requiring heavy lifting and stated claimant would be a good candidate for vocational retraining. At claimant's request, the Vocational Rehabilitation Division (VRD) developed a plan of retraining for claimant which involved enrollment in Technical Training Services (TTS) to be trained as an automobile mechanic. This training program was approved by the Workmen's Compensation Board which authorized a monthly maintenance payment for claimant while he attended the school.

The training involved classroom instruction and shop experience gained from working on vehicles brought in by members of the public. The vehicle owners were only charged for the parts used but not for the labor. The students received no remuneration for repairing the vehicles.

In September of 1975, claimant, while working on a vehicle at TTS during class, slipped on some grease and injured his back. It is this injury for which he seeks compensation. The hearings referee held VRD and TTS were not responsible for compensation for the injury, but the injury was compensable and the responsibility of Chappell-Spears, the original employer. The Board reversed holding the injury was not compensable. The circuit court reversed the Board holding

VRD responsible for compensation coverage of the injury on the theory the VRD was estopped to deny coverage when it had failed to submit claimant's name as a covered trainee under ORS 655.615.

The Fund, which is the insurer for Chappell-Spears, VRD and TTS, argues first that claimant was not employed at the time of this latter injury by Chappell-Spears, VRD or TTS as employment is defined in ORS 655.405 and thus the injury did not occur within an employment situation and is not compensable. Secondly, the Fund contends the injury is not an aggravation of the primary injury and is not compensable. Thirdly, the Fund says, that claimant, as a student at TTS, does not come under the provisions of ORS 655.615 since he was not involved in on the job training or work experience.

We hold the injury is compensable under the Workers' Compensation Act and is chargeable to Chappell-Spears.

The circuit court in finding claimant was entitled to benefits held:

> "Claimant was engaged in a work experience program and the State Accident Insurance Fund is estopped from denying coverage because the Vocational Rehabilitation Division failed to submit his name under the provisions of ORS 655.615."

This section provides that VRD shall submit a list of names of persons enrolled in the work evaluation or work experience program to the Fund as covered employes. An injured enrollee is entitled to benefits only if his name is included on the list and if injured

> "* * * while performing any duties arising out of and in the course of their participation in the work evaluation or work experience program, provided the duties being performed are among those:
>
> "(a) Described on the application by the division [VRD]; and
>
> "(b) Required of similar full-time paid employes."

ORS 655.615(4).

■ Claimant was a student taking a course to become an automobile mechanic and was not performing duties "required of similar full-time paid employes" of Chappell-Spears, VRD or TTS. Consequently, his injury would not be compensable under ORS 655.615, even if his name had been included as a covered trainee.

■ Claimant argues, in part, the injury sustained at TTS is an aggravation of the primary injury to his back sustained while working for Chappell-Spears. His argument is based on a statement of the treating physician that he considered the "* * * present episode an aggravation of [claimant's] pre-existing injury associated with his attempt at schooling and retraining. * * *" This statement appears to reflect the opinion that medical causation for aggravation exists in that claimant injured the same part of his body affected in the primary injury at Chappell-Spears.

Aggravation as defined in ORS 656.273 is "* * * worsened conditions resulting from the original injury." *See also, Keefer v. State Ind. Acc. Commission,* 171 Or 405, 135 P2d 806 (1943); *Johnson Lbr. Co. v. SAIF,* 20 Or App 419, 532 P2d 38 (1975). The facts of this case establish an intervening independent accident which led to claimant's condition. It is a new injury and Chappell-Spears is not responsible on the theory of aggravation.

The referee, citing 1 Larson, Workmen's Compensation Law 3-293, § 13.11 (1972), found the injury compensable. Professor Larson, after discussing a number of cases where a new injury occurred during activity that followed as a natural consequence of the primary injury, stated the following principle:

"* * * Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call 'quasi-course of employment.' By this expression is meant activities

undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself. * * *"

Although the quotation from Professor Larson's treatise forms a conceptual basis for our decision it is unnecessary to adopt his complete rationale. We do not base our decision on an application of a "but for" test. The principle we glean from *Larson* is that the Workers' Compensation Act concept of compensability for injuries sustained in the course of and arising out of employment includes injuries during activities which are a direct and natural consequence of the original injury.

This principle is exemplified by cases involving new injuries sustained during activities related to medical treatment for a primary compensable injury. In each of the following cases the court was determining if the new injury was in the course of and arose out of the claimant's employment.

The claimant in *Yount v. United Fire & Casualty Co.,* 256 Iowa 813, 129 NW2d 75 (1964), sustained a compensable injury to his finger. He went to the doctor to have the fractured finger treated. He returned the following day because of pain and swelling on the injured finger. The doctor administered a drug by injection to alleviate the pain. Claimant went into shock and suffered a stroke which resulted in partial disability. The disability resulting from the stroke was held to be compensable. The court reasoned there was a chain of causation between treatment for the primary injury, shock from the injection and the stroke which produced the disability.

In *Wilson v. Emery Bird Thayer Company,* 403 SW2d 953 (Mo 1966), claimant suffered an on the job

injury to her back. At the hospital she was placed in traction for treatment of the injury. As a result of the traction device she sustained a new injury to her jaw. The court held this later injury was compensable because there was a direct causal connection between the primary injury, the treatment and the new injury.

In *Owens v. Neeb Kearney & Company,* 181 So2d 301 (La App 1966), the claimant experienced a "burning pain" in his side while lifting on the job. He was sent to a doctor selected by the employer. The doctor incorrectly diagnosed the pain as resulting from a hernia and immediately commenced surgery. It was discovered the complaint was not due to a hernia and the surgical incision was closed. As a result of pain and tenderness associated with the incision claimant was unable to return to heavy lifting. The court held the disability resulting from the surgery was compensable. *See also, American Surety Corp. v. Bush,* 100 Ga App 819, 112 SE2d 635 (1959); *McCorkle v. McCorkle,* 265 SW2d 779 (Ky 1954).

We have been cited to no Oregon cases of similar import and have discovered none. However, the principle we extract from these authorities and from Professor Larson's treatise we find to be a proper basis for compensability.

■ The new injuries occurred while the worker was engaged in activities outside the time and space limits of the employment but the activity was a direct and natural consequence of the primary compensable injury. This principle should not be restricted to activities incident to obtaining medical services for the primary injury. The Workers' Compensation Act contemplated more. It contemplates the worker is to receive all benefits for an injury including vocational rehabilitation designed to restore the injured worker to full employability. *See,* ORS 656.268(1). The vocational rehabilitation benefits are as much a part of the injured worker's entitlement under the Act as medical treatment for the injury. It follows the vocational

retraining in which claimant was involved when he sustained the new injury is a natural and direct consequence of the primary injury. It is not an illogical extension of the concept of compensation to allow benefits for a new injury occurring during the reasonable activities of vocational retraining which flow as a direct and natural consequence of the primary injury.

The Fund argues this concept would provide automatic insurance coverage, courtesy of the original employer, throughout the injured worker's rehabilitation program. Implicit in the employment contract of a covered worker is an agreement by the employer to compensate an injured worker for the injuries and their natural and direct consequences. That a worker may be injured permanently and be entitled to long term compensation and medical benefits, or injured to the extent he is unemployable without retraining is a risk of employment the Workers' Compensation Act seeks to spread over a larger base. ORS 656.004. The Act seeks to alleviate the injured worker's burden incident to his injury and restore to him the primary commodity he has for income production, his employability. Just as an employer, through the Workers' Compensation Act, is an insurer of the injured worker's good health through the provisions for continued medical benefits, or for his livelihood if he can no longer work, the employer likewise should insure him against injury during the retraining required as a consequence of the original injury. The provisions of the Act should be liberally construed in favor of the injured worker to accomplish these purposes.

Reversed and remanded with instructions to reinstate the order of the referee.