Argued and submitted June 12,
reversed and remanded September 22,
reconsideration denied November 6, 1980,
petition for review denied January 13, 1981 (290 Or 302)

In the Matter of the Compensation of
FIRKUS,
*Petitioner,*
*v.*
ALDER CREEK LUMBER, et al,
*Respondents.*

(No. 78-5349, CA 14631)

617 P2d 620

Robert K. Udziela, Portland, argued the cause for petitioner. On the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary and Dan O'Leary, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The issue in this workers' compensation case is whether claimant's original employer, respondent Alder Creek Lumber Co., is chargeable with a compensable injury which occurred during an authorized program of vocational rehabilitation.

Claimant suffered a compensable injury to his right elbow in July, 1976, while employed by respondent Alder Creek Lumber Company. EBI Companies, respondent's insurance carrier, accepted claimant's claim and paid him benefits. In September, 1977, the Disability Prevention Division of the Workers' Compensation Department (Department) referred claimant to the Vocational Rehabilitation Division of the Department of Human Resources (VRD) for vocational assistance. VRD developed a plan for retraining claimant as a service station manager by placing him in a job at a service station. VRD's plan was authorized by the Department as a vocational rehabilitation program for claimant and EBI Companies continued to pay claimant temporary total disability while he was engaged in the retraining program at the service station. *See,* ORS 656.268(1); 656.728. Claimant received no remuneration from either the service station or VRD while engaged in the vocational program.

On March 21, 1978, approximately three weeks after beginning training, claimant suffered a new injury to his right elbow. EBI Companies denied responsibility for this second injury on the grounds that claimant had previously been declared medically stationary (regarding the first injury) and that SAIF, as the insurance carrier for VRD, had accepted responsibility for the claim. Claimant appeals from the Board's order affirming EBI Companies' denial of responsibility for the second injury.

Claimant argues first that ORS 655.605 and 655.615,[1] which require VRD to secure Workers' Compensation coverage for certain clients placed in work evaluation or work experience programs, do not apply

---

[1] The relevant portion of ORS 655.605 and 655.615 are quoted at p. 256-57, *infra.*

to participants in an authorized program of vocational rehabilitation under the Workers' Compensation Act (Act). Claimant contends that under the "natural consequences" theory adopted by this court in *Wood v. SAIF,* 30 Or App 1103, 569 P2d 648 (1977), *rev den* 282 Or 189 (1978), his original employer is responsible for the second injury because it was sustained while performing required duties in an authorized vocational rehabilitation program. Claimant's second argument is that, in the event ORS 655.605 and 655.615 are found to apply, the compensation coverage provided under those statutes does not constitute his exclusive remedy. Therefore, he is not precluded from obtaining compensation from his original employer under *Wood v. SAIF, supra.*

We hold that ORS 655.605 and 655.615 do not apply to workers participating in authorized programs of vocational rehabilitation under the Act, and that claimant's original employer, Alder Creek Lumber, is responsible for the March 21, 1978, injury to his arm.

In *Wood v. SAIF, supra,* an injured worker suffered a new injury while enrolled and actively engaged in an authorized program of vocational rehabilitation. We held the claimant's original employer responsible for compensation benefits, despite the fact that the new injury occurred outside the time and space limits of the original employment, because the second injury occurred "during the reasonable activities of vocational retraining which flow as a direct and natural consequence of the primary injury." We reasoned that

"[i]mplicit in the employment contract of a covered worker is an agreement by the employer to compensate an injured worker for the injuries and their natural and direct consequences. * * * The Act seeks to alleviate the injured worker's burden incident to his injury and restore to him the primary commodity he has for income production, his employability. Just as an employer, through the Workers' Compensation Act, is an insurer of the injured worker's good health through the provisions for continued medical benefits, or for his livelihood if he can

no longer work, the employer likewise should insure him against injury during the retraining required as a consequence of the original injury. The provisions of the Act should be liberally construed in favor of the injured worker to accomplish these purposes." 30 Or App at 1110.

Although VRD developed the retraining plan for the claimant in *Wood,* we were not required to decide whether VRD would be responsible for claimant's second injury because, even assuming that VRD could be held responsible, we found that the statutory prerequisites to such responsibility were not met. 30 Or App at 1106-07; ORS 655.615. This case directly presents the question of whether VRD must provide compensation coverage and assume responsibility for injuries to workers' compensation clients to whom it supplies vocational rehabilitation services.

The Vocational Rehabilitation Division of the Department of Human Resources, ORS 184.750(3)(f), 344.520, is designed to assist the vocationally handicapped and to provide vocational rehabilitation for eligible individuals with occupational handicaps. ORS 344.530. VRD is required to cooperate with other departments and agencies in providing rehabilitation services. ORS 344.530(3)(a).

In the course of its operations, VRD sometimes places its clients in work evaluation or work experience programs in which the clients engage in non-remunerative, on-the-job training. *See* ORS 655.605(3),(4). In 1971 the VRD approached the legislature with a plan for shielding from workers' compensation liability those employers who accepted VRD clients in their businesses as part of a work evaluation or work experience program. SB 292, Reg. Sess. (1971). This plan was designed to facilitate placement of VRD clients by protecting an accepting employer from potential liability for workers' compensation claims unless and until the employer actually hired a client. Thus, an accepting employer could assist a VRD client without having to pay wages or risk the financial impact of a workers' compensation claim. Minutes,

Senate Committee on Labor and Industries (March 17 and May 19, 1971); Minutes, House State and Federal Affairs Committee, Financial Affairs Subcommittee (1971).

VRD's plan provided in essence that VRD would supply compensation coverage for its clients and that such coverage would constitute the *sole* remedy for compensable injuries against the state or the person providing on-the-job training. The plan was adopted by the 1971 legislature, Or Laws 1971, ch 581 §§ 1, 2, and currently reads, in pertinent part:

"ORS 655.605:

"* * * * *

"(3) 'Employment' means work experience through nonremunerative, on-the-job training as a part of a special training program of the Vocational Rehabilitation Division of the Commission for the Blind occurring on the premises of the employer or at such other places as the Vocational Rehabilitation Division or the Commission for the Blind and the employer may agree.

"(4) 'Injury' means any personal injury sustained by a trainee by accident, disease or infection arising out of and in the course of his employment, or death resulting proximately therefrom as provided in ORS chapter 656.

"(5) 'Trainee' or 'client' means an occupationally handicapped person who is participating in a special training or evaluation program of the Vocational Rehabilitation Division or the Commission for the Blind in which the trainee is enrolled.

"(6) 'Division' means the Vocational Rehabilitation Division or the Commission for the Blind. "ORS 655.615:

"* * * * *

"(4) The division shall furnish the department with a list of the names of those enrolled in its work evaluation or work experience program and shall notify the department of any changes therein. Only those clients whose names appear on such list prior to their personal injury by accident are entitled to the benefits of ORS 656.001 to 656.794 and they are entitled to such benefits if injured as provided in ORS

656.156 and 656.202 while performing any duties arising out of and in the course of their participation in the work evaluation or work experience program, provided the duties being performed are among those:

"(a)  Described on the application by the division; and

"(b)  Required of similar full-time paid employes.

"(5)  The filing of claims for benefits under this section is the exclusive remedy of a trainee or his beneficiary for injuries compensable under ORS 656.001 to 656.794 against the state, its political subdivisions, its officers and employes, or the person who provides on-the-job training or job evaluation services for the injured client, regardless of negligence except that the exclusive remedy provisions shall not apply in the case of suits brought under the provisions of ORS 656.576 to 656.597 against third parties."

Pursuant to these sections, VRD currently supplies workers' compensation coverage to its clients participating in special training programs.

In general, VRD shoulders the financial responsibility for its vocational rehabilitation services, including providing compensation coverage when necessary. ORS 344.550; *see* ORS 344.620 to 344.690; OAR 582-70-010 to 582-70-030. However, when VRD provides rehabilitation services to *industrially* injured workers, it "will provide only for the cost of those rehabilitation services which are not the responsibility of the Oregon Workers' Compensation Department." OAR 582-70-030(3).

The speedy restoration of injured workers to a condition of self support and maintenance as able-bodied workers is a significant function of the Department. ORS 656.728. The Department's Field Services Division (FSD) is responsible for providing, or authorizing and administering, vocational services for injured workers. ORS 656.728(1); OAR 436-61-004(1). It is important to recognize that although FSD *provides* all vocational services rendered to eligible in-

jured workers, it may use contracting vocational rehabilitation organizations to actually *supply* those services. OAR 436-61-120(1). Departmental policy is that when the FSD lacks staff capability to supply vocational assistance programs, it may assign injured workers to outside vocational rehabilitation organizations for authorized rehabilitation programs. OAR 436-61-101(8).[2]

Thus, after FSD determines that a worker is eligible for vocational assistance, OAR 436-61-100, and selects a suitable vocational program, OAR 436-61-110, it either directly provides the program or authorizes the workers' participation in a program operated by a contracting vocational rehabilitation organization. OAR 436-61-120; 436-61-300(4). The contracting vocational organization may be either a private entity or a governmental unit. The Department bears the financial responsibility for its vocational assistance programs, including payments to contracting vocational rehabilitation organizations. ORS 656.616, 656.728(2), (3); OAR 436-61-005(29), 436-61-300.

■    Under the Act, neither a contracting vocational rehabilitation organization nor an employer supplying an on-the-job position is required to provide compensation coverage for a trainee placed in a non-remunerative, on-the-job training program, because the organization is not an "employer" and the trainee is not a "worker" within the meaning of the Act, ORS 656.005(16), (31).[3] Thus, when VRD provides voca-

---

[2] Although the extent of the Department's involvement in rehabilitation has been expanded in recent years, 1973 Or Laws, ch 634, §§ 2 and 3; *see* OAR 436-61-410(2), the workers' compensation authority in this state has long been empowered to provide for rehabilitation of injured workers. *E.g.,* former ORS 344.640 to 344.670 (1953, as amended.)

[3] ORS 656.005(16) and (31) provide:

"(16) 'Employer' means any person, including receiver, administrator, executor or trustee, and the state, state agencies, counties, municipal corporations, school districts and other public corporations or political subdivisions, who contracts to pay a remuneration for and secures the right to direct and control the services of any person.

tional services to FSD pursuant to a contract, it is not required by the Act to supply compensation coverage to individuals placed in work experience programs.

The question remains, however, whether VRD is required by *its* controlling legislation to provide compensation coverage for individuals to whom it supplies rehabilitation services pursuant to a contract with FSD.

As discussed earlier in this opinion, VRD must supply coverage to all its trainees or clients enrolled in work evaluation or work experience programs. ORS 655.615(4). A "trainee" or "client" of VRD is "an occupationally handicapped person who is participating in a *special training or evaluation program* of the Vocational Rehabilitation Division * * *." ORS 656.605(5) (emphasis supplied).

██ It is apparent from the foregoing comparison of the operations of the FSD and the VRD that the two divisions generally provide similar services to separate clienteles—the industrially injured occupationally handicapped on the one hand, and all other occupationally handicapped on the other. *Compare,* ORS 344.511(2) and (5), 344.550; OAR 582-50-020 to 040; *with,* ORS 656.728(1); OAR 436-61-010(1)(a), 436-61-100(1). These are essentially parallel agencies, each performing a similar function for a different section of the populace. As discussed, these agencies do not always function in separate spheres. When necessary and appropriate, VRD supplies contracted-for services to clients of FSD. Thus, injured workers participating in an authorized program of vocational rehabilitation, which program happens to be supplied by VRD under a contract with FSD, are not properly characterized as VRD clients in a "special training or evaluation pro-

"(31) 'Worker' means any person, including a minor whether lawfully or unlawrully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer and includes salaried, elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations, but does not include any person whose services are performed as an inmate or ward of a state institution."

gram" under ORS 655.605 and 655.615. Rather, such individuals are workers' compensation clients participating in an authorized program of vocational rehabilitation, which program has been provided and paid for by FSD via a contract with VRD. Based on this distinction between clients of VRD and FSD, we hold that ORS 655.605 and 655.615 do not apply to claimant.

Respondent Alder Creek Lumber concedes that claimant suffered a new injury while enrolled and actively engaged in the authorized vocational rehabilitation program. Claimant is entitled to seek compensation for this second injury from his original employer, respondent, under the doctrine of *Wood v. SAIF, supra.*

Reversed and remanded for the Workers' Compensation Board to determine appropriate compensation to be paid by Alder Creek Lumber Co.

Reversed and remanded.