Argued and submitted June 1, reversed and remanded August 26, reconsideration denied October 16, petition for review denied November 3, 1987 (304 Or 311)

In the Matter of the Compensation of
Emma J. Fenton, Claimant.

FENTON,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 84-02176; CA A40730)

741 P2d 517

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

VAN HOOMISSEN, J.

Warden, P. J., dissenting.

## VAN HOOMISSEN, J.

Claimant seeks review of a Workers' Compensation Board order which affirmed the referee's decision that claimant's cervical injury was not compensable. On *de novo* review, ORS 656.298, we reverse.

On February 2, 1982, claimant sustained a compensable injury to her back. She worked until February 8, when she took time off because of severe pain. She returned to work on March 1 and suffered an increase in symptoms by April 7. Her condition required further medical treatment and time loss. She was treated by Dr. Rabin and Dr. Bert. On May 3, while on her way to see Rabin for treatment of her back, claimant suffered a neck injury in an automobile accident, when her car, which was stopped at a gas station, was struck by another car. Rabin treated her neck injury and notified SAIF that medical and time loss benefits would be paid by the automobile liability insurer.

A settlement with the liability insurer was proposed, and claimant's attorney wrote SAIF inquiring what part of that settlement SAIF would claim. SAIF responded that it considered claimant's neck injury to be separate from her back injury and that, because the automobile liability carriers had paid the medical and time loss due to the neck injury, "SAIF does not have an interest in any settlement which you may make in behalf of claimant Fenton with the insurance carrier for the accident[.]"

On July 29, claimant had back surgery. She continued to be treated by Rabin and Bert for her back injury, with occasional mention of her neck injury. In September, 1983, a determination order awarded her time loss and 20 percent permanent partial disability for her back injury. She requested a hearing, contending that her neck condition is a compensable consequence of her back injury.

A hearing was held in October, 1983. When SAIF expressed surprise about the neck claim, the referee granted a continuance. SAIF thereafter issued a denial of the neck claim, stating that there was no medical connection between the neck injury and the compensable back injury. The referee concluded, *inter alia,* that "the neck injury or cervical injury sustained by claimant as a result of the automobile accident is

too remote from claimant's employment and from the expected consequences of her work injury" to be compensable. The Board agreed.

Claimant argues that, because she was on her way to see Rabin for treatment of her compensable back injury when her neck was injured, the neck injury arose out of an activity that was a "direct and natural consequence" of the treatment for the original compensable injury and, therefore, it is compensable. She relies by analogy on *Williams v. Gates, McDonald & Co.,* 300 Or 278, 709 P2d 712 (1985); *Firkus v. Alder Cr. Lbr.,* 48 Or App 251, 617 P2d 620 (1980), *rev den* 290 Or 302 (1981); and *Wood v. SAIF,* 30 Or App 1103, 569 P2d 648 (1977), *rev den* 282 Or 189 (1978). SAIF argues that the injury was too remote from claimant's employment to be compensable, that it was caused by the negligence of a third party not related to the employer and that claimant faced a risk faced by any person who drives on the public streets.[1] SAIF also argues that the facts show a situation similar to that of a worker who is injured while commuting to work:

> "While it is necessary for the worker to travel to work, and it is to the benefit of the employer for the employe to get to work, the act is too remote to be covered by the workers' compensation law."

ORS 656.005(8)(a) defines a compensable injury as "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death[.]" Oregon has not previously addressed whether an injury sustained in an accident while enroute to a physician for treatment of a compensable injury arises out of and in the course of employment. We have held that an injury incurred while engaged in a vocational rehabilitation program is a compensable consequence of the original injury. *See Firkus v. Alder Cr. Lbr., supra; Wood v. SAIF, supra.* It has also been recognized that an injury incurred as a result of medical treatment for a compensable injury is a compensable consequence of the industrial injury. *See Williams v. Gates, McDonald & Co., supra; Wood v. SAIF, supra.*

---

[1] SAIF's argument that claimant will be compensated twice ignores the fact that claimant's attorney notified SAIF that a settlement had been negotiated with Allstate and offered SAIF an opportunity to assert its claim to the proceeds of that settlement. SAIF declined to make any claim.

Larson has recognized that some injuries not directly within the scope of employment should be compensable.

> "Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call 'quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself. * * * Quasi-course activities in this sense would include, for example, making a trip to the doctor's office * * *[.]" 1 Larson *Workmen's Compensation Law,* § 13.11(d), 3-379 (1985). (Footnotes omitted.)

Larson focuses specifically on travel to a physician for treatment of a compensable injury.

> "When an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable, although there is some *contra* authority. If the journey takes place immediately after the first injury occurs, the chain of causation is most readily visible, as when an employee was being rushed to a hospital following a compensable injury and sustained further injury when the ambulance was involved in a collision. But, quite apart from the element of immediacy, a fall or automobile accident during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey, without any necessity for showing that the first injury in some way contributed to the fall or the accident. * * *

> "When compensation has been denied in this type of case, there has usually been some added factor weakening the causal connection, such as doubt about whether the trip was really authorized, or termination of the employment relation before the second injury occurred. * * *

> "In the simple case, however, of a trip to the doctor's office necessitated by a compensable injury, the arguments put forward by the Kansas court in [*Taylor v. Centex Construction Co.,* 191 Kan 130, 379 P2d 217 (1963)] are difficult to answer.

The court noted that the employer is under a statutory duty to furnish medical care, and that the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected." 1 Larson *Workmen's Compensation Law,* § 13.13, 3-398 (1985). (Italics in original; footnotes omitted.)

As we stated in *Wood v. SAIF, supra:*

"The principle we glean from *Larson* is that the Workers' Compensation Act concept of compensability for injuries sustained in the course of and arising out of employment includes injuries during activities which are a direct and natural consequence of the original injury." 30 Or App at 1108.

We conclude that, when a worker is injured in an accident which occurs during a trip to see a physician for treatment of a compensable injury, the new injury also is compensable.[2] Claimant's trip to Rabin's office was a direct and natural consequence of her compensable injury. Therefore, her neck injury is compensable.

Reversed and remanded.

**WARDEN, P. J.,** dissenting.

Because I disagree with the conclusion of the majority that claimant was en route to the office of her treating chiropractor when she sustained a cervical injury in a collision, I respectfully dissent.

Claimant sustained her injury in May, 1982, when she made a side trip off the public way to Dr. Rabin's office and into a service station, to obtain gasoline for her vehicle. While she was parked in the station another vehicle backed into hers, causing the injury. Assuming that claimant's trip to Rabin's office for chiropractic treatment of her compensable low back injury was equivalent to a trip made for the purpose

---

[2] Other states have held that injuries sustained enroute to medical treatment for a compensable injury are compensable. *See, e.g., Camp v. Lockheed Electronics, Inc.,* 178 NJ Super 535, 429 A2d 615, *rev den* 434 A2d 1090 (1981); *Moreau v. Zayre Corp.,* 408 A2d 1289 (Me 1979); *Laines v. Workmen's Comp. Appeal Bd.,* 48 Cal App 3d 872, 122 Cal Rptr 139 (1975); *Bettasso v. Snow-Hill Coal Corp.,* 135 Ind App 396, 189 NE2d 833 (1963). We also recognize that other courts have reached the opposite result. *See* 1 Larson, *supra,* § 13.13 (1985).

of employer's business, she had deviated from that course and was on an errand of her own at the time of the collision. In cases involving such deviations "a split of opinion appears * * * with the majority still denying compensation, and the minority granting it." 1 Larson, *Workmen's Compensation Law,* § 19.35, 4-387 (1985).

> "[T]he minority cases are weakened by the fact that the rule often serves merely as an alternative ground of decision which the court thinks desirable on other grounds as well, and by the fact that the deviations are often rather small and come very near being independently justifiable." 1 Larson, *supra,* § 19.35, 4-390. (Footnote omitted.)

The majority appears to conclude that the deviation in this case is small and independently justifiable. Cases with factual circumstances similar to this case and in which compensation has been denied include: *Prudential Life Insurance Co. v. Spears,* 125 Ind App 21, 118 NE2d 813 (1954) (insurance salesman parked in front of an account's house, crossed the street to get a piece of wood at a cabinet factory and sustained a fatal fall on re-crossing the street); *Colwell v. Mosley,* 309 SW2d 350 (Ky 1958) (coal-truck driver, on his route between the mine and the tipple, was killed when his truck was struck by another truck as he maneuvered to get into position to pull his brother-in-law's stalled car); *Mills v. Standard Parts Service Co.,* 269 Minn 501, 131 NW2d 546 (1964) (claimant fell after leaving a restaurant where he had had lunch en route between two of his employer's business sites); *Lumbermen's Mut. Cars. Co. v. Dedmon,* 196 Tenn 94, 264 SW2d 567 (1951) (lumber inspector, en route from a mill to his hotel, was struck by a car when re-crossing a street after visiting a sporting goods store); and *Hill v. Dept. of Labor & Industries,* 173 Wash 575, 24 P2d 95 (1933) (street car operator was struck by a car while crossing from his stopped street car to mail a letter at a post office along his route).

When claimant sustained her injury in May, 1982, she was not on her way to the chiropractor for treatment; she had stopped on a side trip of her own to buy gasoline. In *Wood v. SAIF,* 30 Or App 1103, 1108, 569 P2d 648 (1977), *rev den* 282 Or 189 (1978), we said:

> "The principle we glean from *Larson* is that the Workers' Compensation Act concept of compensability for injuries sustained in the course of and arising out of employment includes

injuries during activities *which are the direct and natural consequence of the original injury."* (Emphasis supplied.)

Claimant's act of stopping for gasoline was not a "direct and natural consequence of [her] original injury." Because it was not, the injury sustained in the collision in the service station is not compensable. The Board should be affirmed. I therefore dissent.[1]

---

[1] The majority notes, almost in passing, that medical and personal injury benefits would be paid by the other driver's insurance carrier and that a "settlement was proposed." It fails to mention that claimant settled her claim with the carrier for $10,000 and executed a release discharging the other driver and his carrier and

"any other other person, firm or corporation charged or chargeable with responsibility or liability * * * from and all claims, demands, damages, costs, expense, [and] loss of services * * * arising from any act or occurrence up to the present time and particularly on account of all * * * loss or damages of any kind already sustained or that I may hereafter sustain in consequence [of the May, 1982, collision]."