858 P.2d 669

Bob JOPLIN, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Southwest Supermarkets, Respondent Employer,

Fremont Compensation Ins. Co., Respondent Carrier.

No. 1 CA–IC 92–0001.

Court of Appeals of Arizona, Division 1, Department A.

March 2, 1993.

Review Denied Sept. 30, 1993.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Indus. Com'n of Ariz., Phoenix, for respondent.

Jones, Skelton & Hochuli by Charles G. Rehling, Phoenix, for respondent employer and respondent carrier.

**OPINION**

LANKFORD, Presiding Judge.

This is a special action review of an industrial commission award denying compensation for a nonindustrial auto accident occurring when petitioner employee ("claimant") was returning home from treatment for his industrial injury. Two issues are presented for review:

(1) Is an injury while traveling for treatment of an industrial injury compensable?

(2) Did claimant remove himself from coverage by a substantial deviation on his return home?

We find that injury while traveling for treatment of an industrial injury is compensable. We further find that there is sufficient evidence to support the A.L.J.'s finding that the claimant substantially deviated. Accordingly, we affirm the award.

**I.**

Claimant injured his left foot at work. His treating physician recommended physical therapy, which was performed at Phoenix Memorial Hospital on Seventh Avenue and Buckeye Road. Claimant resided in Buckeye, Arizona on Buckeye Road and commuted to the hospital three days a week.

On January 3, 1991, claimant suffered injuries in an auto accident while driving home several hours after a physical therapy session. He retained counsel and pursued a tort claim, which he subsequently settled without notice to or consent from the compensation carrier ("Fremont"). Claimant then retained his current workers' compensation counsel and claimed that his injuries in the auto accident were a compensable consequence of the industrial injury. When Fremont denied liability, claimant requested a hearing under Ariz. Rev.Stat.Ann. ("A.R.S.") section 23–1061(J) (1983).

At the hearing, claimant testified that he normally drove to the hospital on I–10 through the interchange (the "stack") to I–17 and exited at Seventh Avenue. According to claimant, he avoided the stack on his

return trip because of a prior accident. He instead normally took I–17 to Indian School Road, proceeded west to Seventy-fifth Avenue, and then took I–10 to Buckeye. He also testified that he could not eat before therapy because he sometimes became ill and that his wife wanted him to eat before returning home.

Claimant recalled driving to the hospital on the day of the auto accident but could not recall the circumstances of his physical therapy. The A.L.J., however, accepted testimony from Fremont's claims supervisor that Claimant had therapy from 8:00 a.m. to 8:45 a.m. According to claimant, he then made several telephone calls to medical supply stores to inquire about purchasing a paraffin bath, which his therapist had recommended for use at home. Claimant testified that before driving to a supply store on south Seventh Street, he drank a cup of coffee in his car. Once at the store, he waited about forty-five minutes for help. Although in his deposition he stated that he had ordered the bath, he testified at the hearing that he had only priced it.

Claimant also testified that after finishing his business at the store, he had another cup of coffee and then began his drive home. He proceeded on I–17 and exited at Indian School Road. He then drove west to 35th Avenue, stopping at a restaurant for a hamburger. According to claimant, while at the restaurant, he called Fremont to request authorization for the bath. Fremont produced evidence that claimant's doctor first prescribed the bath on January 15, 1991, and that claimant had first contacted Fremont about it on January 16th.

Claimant testified that he left the restaurant at about 1:00 p.m. and proceeded west on Indian School Road. About fifteen minutes later, while he was stopped at a signal at Fifty-first Avenue, another vehicle rear-ended him.

After the hearing, the parties submitted memoranda. Among other defenses, Fremont argued that Claimant's account of his destinations and routes after his therapy ended at 8:45 a.m. lacked credibility.

The A.L.J. then issued the award. He assumed that an injury occurring during a commute for medical treatment of an industrial injury is compensable in principle. But he nevertheless denied compensability, reasoning that the claimant had removed himself from the scope of this coverage:

12. Giving applicant the benefit of a doubt, his physical therapy ended at 8:45 A.M. Allowing 15 minutes for his coffee in his car and 15 minutes driving time to the medical supply house, he arrived at the supply house at 9:15 A.M. If he waited 30 to 45 minutes and then drank another cup of coffee in his car before leaving, he left the supply house for home at approximately 10:15 A.M. The subject motor vehicle accident happened 3 hours later at 1:15 P.M.

13. While it seems reasonable that there should be worker's [sic] compensation coverage when one is traveling to and from medical appointments necessitated by an industrial injury, in the instant proceeding, it appears to the undersigned that applicant's whereabouts from the time he left the medical supply house until the time the motor vehicle accident happened were such as to take applicant outside the anticipated coverage of the Arizona worker's [sic] compensation statutes and the case law.

After the A.L.J. affirmed on review, claimant brought this special action.

## II.

Whether a deviation from covered employee travel is substantial is generally a question for the fact-finding body. *See Sherrill & La Follette v. Herring,* 78 Ariz. 332, 338, 279 P.2d 907, 911 (1955) (reasonableness or unreasonableness of time period of a deviation is a fact question). "[T]his Court is not a trier of fact, but must affirm an award of the Industrial Commission if supported by any theory of the evidence." *Fisher Contracting Co. v. Industrial Comm'n,* 27 Ariz.App. 397, 401, 555 P.2d 366, 370 (1976). We will not substitute our judgment for that of the A.L.J. when a factual determination is involved. *Id.*

Before reviewing the question of whether this claimant substantially deviated, however, we consider the A.L.J.'s assumption that an injury while traveling for treatment is compensable. We believe that the better rule is to extend coverage to travel for treatment:

> [T]he employer is under a statutory duty to furnish medical care, and ... the employee is similarly under a duty to submit to reasonable medical treatment under the act. The provisions of the act, in turn, become by implication part of the employment contract. This being so, the better view appears to be that accidental injuries during a trip made pursuant to this statutory and contractual obligation are work connected.

1 Arthur Larson, *The Law of Workmen's Compensation*, § 13.13 at 3–573 (1992).

Although our supreme court has denied coverage for travel to an independent medical examination, *Whitington v. Industrial Comm'n*, 105 Ariz. 567, 569, 468 P.2d 926, 928 (1970), the court has never determined that travel for treatment is not covered. The A.L.J. concluded that *Whitington* did not apply to travel for treatment because the supreme court distinguished travel for independent medical examinations from travel for treatment. We agree. *Whitington*, 105 Ariz. at 569, 468 P.2d at 928 (*quoting* 1 Larson, *supra*, § 13.13 (1966)).

The A.L.J. also concluded that the scope of coverage for travel to medical treatment has limits and that claimant exceeded those limits. The nature of the limits on this coverage is the primary focus of this special action.

The parties rely on authority concerning personal deviations from work-related travel generally to attack and support the A.L.J.'s award. *Compare, e.g., Gurovich v. Industrial Comm'n*, 113 Ariz. 469, 471–72, 556 P.2d 1131, 1133–34 (1976) (unless employer specifies route, employee not required to take most direct route to business destination, and employee presumably returns to the course of employment when he resumes direction toward business destination) *with, e.g., Sherrill*, 78 Ariz. at 337–38, 279 P.2d at 910–11 (1955) (supreme court deferred to commission's finding that deviation of one to three hours was not abandonment of business trip).

While Arizona case law deals only with business travel, other jurisdictions have directly considered the scope of coverage for travel to treatment. Minor deviations do not affect coverage. For example, in *Fenton v. SAIF Corporation*, 87 Or.App. 78, 741 P.2d 517 (1987), the worker was involved in an accident when she deviated from her route to her treating doctor to fuel her vehicle. Although the majority did not discuss the effect of this deviation, the dissenting judge argued that compensability should have been denied because of it. *Fenton*, 741 P.2d at 520–21. We agree with Larson's criticism of this dissent as "a rather narrow approach. Once the trip to the doctor's office is characterized as covered, such minor deviations as this should not change the classification." 1 Larson, *supra*, § 13.13 n. 60 at 3–565—66.

In contrast, a major deviation does affect coverage. For example, in *Kodiak Oilfield Haulers v. Adams*, 777 P.2d 1145 (Alaska 1989), the claimant suffered a back injury while working in rural Alaska. He traveled to Anchorage for medical treatment, but before his return trip, he spent five days in the city. While returning home he was rear-ended in an auto accident. Although the claimant had resumed his trip home and his deviation had not added risks to this travel, the court concluded that the substantial personal deviation removed the trip from coverage:

> [A]t some point the length of an employee's delay in returning home does function to destroy the trip's work connection regardless of whether it increases or lessens the risk of the return journey. As Professor Larson notes, "An employee who has the right to have his homeward journey covered cannot, so to speak, put the right in the bank indefinitely and cash it at whatever future time suits his convenience."

777 P.2d at 1149 (quoting 1 Larson, *supra*, § 19.29 (1985)) (current version at § 19.-29(b) at 4–386 (1992)).

■ The case at hand falls between these two extremes. The A.L.J. appeared to accept claimant's version but to conclude that his account established a substantial deviation. Because the A.L.J. did not expressly reject claimant's credibility, *Cf. Villanueva v. Industrial Comm'n*, 148 Ariz. 285, 289, 714 P.2d 455, 459 (App.1985) (appellate court will not imply a rejection of credibility), we accordingly consider whether the facts as claimant described them support a finding of substantial deviation.

According to Larson, courts have considered several factors when determining whether a deviation is substantial: the duration of the deviation, the purpose of deviation, the amount of increased risk caused by the deviation, the nature of the employee's job, and whether there is an identifiable moment when the employee's work duties ended. 1 Larson, *supra*, § 19.29(c) at 4–387—88 (1992).

We cannot disturb the A.L.J.'s conclusion in circumstances "where the time element becomes of importance in deciding whether the employment was terminated by deviation and two reasonable inferences could be drawn ..." *Sherrill*, 78 Ariz. at 338, 279 P.2d at 911. Absent hard and fast rules, factual questions are to be decided by the A.L.J. *Fisher Contracting Co.*, 27 Ariz. App. at 401, 555 P.2d at 370. The A.L.J. found that claimant left the medical supply house at 10:15 a.m. and was injured in a motor vehicle accident three hours later. We defer to the A.L.J.'s finding that claimant thereby substantially deviated from covered employee travel and thus removed himself from the coverage of the workers' compensation laws.

### III.

■ The respondent carrier also contends that the going and coming rule applies to travel for medical treatment. Generally, accidents which occur when an employee is going to or coming from work are not considered to arise out of or occur in the course of employment. *Brooks v. Industrial Comm'n*, 136 Ariz. 146, 664 P.2d 690 (App.1983).

■ Other jurisdictions have considered and rejected the extension of the going and coming rule to injuries while traveling for treatment of an industrial injury. *See Kodiak Oilfield Haulers*, 777 P.2d at 1149; *Fenton*, 741 P.2d at 519. Because the injured worker must submit to reasonable treatment, travel for this treatment is necessary. *See* ARIZ.CONST. art. XVIII, § 8. Such travel is analogous to a "special errand" impliedly authorized by the employer. *Kodiak Oilfield Haulers*, 777 P.2d at 1149. Therefore, travel for medical treatment is not ineligible for coverage under the going and coming rule.

### IV.

■ The carrier also argues that the auto accident was a superseding cause of claimant's injuries. This court has recently rejected the superseding cause argument. Unless the claimant is negligent or the causal connection to the industrial injury is too attenuated to support compensability, an injury in an auto accident after an industrial injury may be a compensable consequence of the industrial injury. *See Lou Grubb Chevrolet, Inc. v. Industrial Comm'n*, 174 Ariz. 23, 25–27, 846 P.2d 836, 838–840, (App.1992).

### V.

Finally, the carrier contends that the employee's settlement of the automobile tort claim without the carrier's consent insulates it from liability. Because he found that the claimant had substantially deviated from covered travel, the A.L.J. did not address this argument. Consequently, we do not consider this issue on review.

The award denying compensation for the injuries suffered in the nonindustrial auto accident is affirmed.

KLEINSCHMIDT and O'MELIA,* JJ., concur.