Argued and submitted September 22, 1995, affirmed August 28, 1996, petition for review allowed April 8, 1997 (325 Or 247)
See later issue Oregon Reports

In the Matter of the Compensation of
Kathleen A. Robinson, Claimant.

Kathleen A. ROBINSON,
*Petitioner,*

*v.*

NABISCO, INC.,
*Respondent.*

(WCB No. 93-02515; CA A85643)

923 P2d 668

Robert Wollheim argued the cause for petitioner. With him on the brief was Welch, Bruun, Green & Wollheim.

Patric J. Doherty argued the cause for respondent. With him on the brief were Karli L. Olson and VavRosky, MacColl, Olson, Doherty & Miller, P.C.

Before Deits, Presiding Judge, and De Muniz and Landau, Judges.

DEITS, P. J.

**DEITS, P. J.**

Claimant seeks review of a Workers' Compensation Board order holding that a herniated disc injury that she sustained during an independent medical exam (IME) was not compensable as a consequence of the compensable low back injury that necessitated the IME. We affirm.

Claimant suffered a compensable injury on April 15, 1981, while working on an assembly line for employer. She was diagnosed with low back strain and leg radiculopathy, both on the right side. She was hospitalized and eventually returned to work. On February 9, 1982, she was declared medically stationary, her claim was closed and she was awarded time loss benefits. Claimant continued to experience pain on the right side and, on March 14, 1984, her claim was again closed and she was awarded 15 percent permanent partial disability.

The claim was subsequently reopened due to an aggravation of claimant's condition and was reclosed by a third determination order of May 15, 1986, which awarded only additional time loss benefits. On February 18, 1987, claimant and employer stipulated to an increase in claimant's permanent partial disability for a total award of 25 percent. In January of 1988, she began receiving treatment from Dr. Kemple, who has followed her progress to date. Claimant has not worked since April of 1988. On April 15, 1988, her claim was again reopened and benefits continued until the Board, on its own motion, issued a notice of closure on May 30, 1990. In April of 1991, claimant received a lump sum payment pursuant to a Disputed Claim Settlement, in which employer denied claimant's upper back injury as a new injury/occupational disease claim, but continued acceptance of her conditions as an aggravation of the original 1981 claim.

On June 23, 1992, claimant was sent to two independent medical examinations. The first was with Dr. Watson, a neurologist, and Dr. Dinneen, an orthopedist. During that examination, which was performed by Watson, claimant told the doctor of significant back problems. Watson had her perform straight leg raising tests while lying on her back. She told him that she could not raise her right leg. He

asked her to raise her left leg and, when she did so, Watson moved it past where she had, causing her immediate pain in the left low back and hip area. She told Watson that he had hurt her and reported the same to her daughter that evening. On July 1, 1992, claimant returned to Kemple for care. Claimant also saw Dr. Gandler, who ordered a lumbar CT scan. On January 6, 1993, Dr. Stoney performed a CT scan which revealed for the first time, significant bulging and left-sided herniation of the L5-S1 disc. Claimant attended a neurosurgical evaluation by Dr. Morris and surgery was recommended.

On February 17, 1993, employer issued a partial denial for claimant's left L5-S1 herniated disc injury and surgery. Claimant subsequently had surgery with Dr. Morris in March of 1993.She requested a hearing on employer's partial denial.A hearing was held in May of 1993. The administrative law judge (ALJ) upheld employer's partial denial of claimant's surgery and treatment for her herniated disc, concluding that although claimant's testimony was credible, the evidence presented did not prove that her original compensable injury was the major contributing cause of her new consequential injury.[1] On review, the Board adopted and affirmed the ALJ's order.

The Board subsequently issued an order on reconsideration.[2] In that order, it held that

"if a claimant sustains an injury while attending a carrier-requested medical examination, to be compensable under ORS 656.005(7)(a)(A), the claimant must establish that the compensable injury that necessitated the examination was the major contributing cause of the consequential condition. That a claimant is injured during a carrier-requested medical examination establishes that claimant has sustained a consequential condition cognizable under ORS

---

[1] The ALJ found that there was "no medical evidence that the major contributing cause of claimant's surgery for the herniated disc at L5-S1 was the initial industrial injury. The major cause of the need for surgery was a new injury that claimant sustained during the independent medical exam or the combination of that injury with some degree of preexisting degenerative disc disease in the spine."

[2] We note that the Board was without the benefit of our decision in *Barrett Business Services v. Hames*, 130 Or App 190, 193, 881 P2d 816, *rev den* 320 Or 492 (1994), when it issued its order on reconsideration in this case.

656.005(7)(a)(A). What remains to be determined, on a case-by-case basis, is whether the claimant has established by persuasive medical evidence that her original injury is the major contributing cause of her consequential condition. For the reasons set forth above, we conclude that, in this case, claimant has not met her burden of proof under that standard."

The Board concluded:

"Here the evidence establishes that the major contributing cause of claimant's need for surgery was the new injury that she sustained during the medical examination. Her treating physician concluded that there was only a remote possibility that her current need for surgery was predominately related to her original compensable injury * * * whereas her treating surgeon was unable to render an opinion regarding whether her original injury was causally related to her current low back condition."

Claimant argues that the Board erred as a matter of law in concluding that her compensable injury was not the major contributing cause of the consequential injury that she sustained during the IME. Claimant contends that no meaningful distinction can be drawn between an injury incurred during treatment and one suffered during an IME. Claimant reasons, therefore, that because a consequential injury which results from treatment is compensable, *Barrett Business Services v. Hames*, 130 Or App 190, 193, 881 P2d 816, *rev den* 320 Or 492 (1994), a consequential injury sustained during an IME also should be compensable.

The governing statute is ORS 656.005(7), which provides in pertinent part:

"(a) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

We have previously considered the language of this statute. Specifically, we have addressed its meaning after an amendment by the 1990 legislature. In *Hicks v. Spectra Physics*, 117 Or App 293, 296, 843 P2d 1009 (1992), we discussed whether the language, "consequence of a compensable injury," included injuries that did not directly result from the compensable injury, but were the result of activities that would not have been undertaken "but for" the compensable injury. After reviewing the legislative history of the 1990 amendments, we concluded that the legislature intended to restrict the compensability of such injuries. We said:

> "Under ORS 656.005(7)(a)(A), *any* injury or condition that is not *directly* related to the industrial accident is compensable *only if* the major contributing cause is the compensable injury." *Id.* at 297. (Emphasis in original.)

Accordingly, in *Hicks*, we held that where a claimant suffered injuries in an auto accident while returning from treatment of a compensable injury, those accident-related injuries were not compensable under ORS 656.005(7)(a)(A), because the compensable injury was not the major contributing cause of the accident-related injuries.

Applying this same rationale in *Kephart v. Green River Lumber*, 118 Or App 76, 79, 846 P2d 428, *rev den* 317 Or 272 (1993), we concluded that the injury that the claimant incurred during vocational rehabilitation was not directly related to the compensable injury, but rather, was a consequence of that injury. Accordingly, we held that the Board correctly applied the major contributing cause standard of ORS 656.005(7)(a)(A) and concluded that the injury that claimant incurred while participating in vocational rehabilitation was not the major contributing cause of the new injury and, therefore, was not compensable. We specifically noted in *Kephart* that it made no difference that the claimant was injured while actually involved in vocational training, as opposed to being en route to training.

As noted above, claimant relies, in particular, on our decision in *Hames*. In that case, the claimant sustained a compensable dislocation of his right shoulder. As part of claimant's therapy for that injury, the treating orthopedic surgeon prescribed "extremely aggressive" physical therapy

involving rigorous range of motion exercises of the claimant's arm and shoulder. During that therapy, the claimant's right ulnar nerve was injured. .

We held that the injury that occurred during physical therapy was compensable. In explaining our conclusion, we recognized the holdings in *Hicks* and *Kephart*, but found them to be distinguishable. We noted that the causal connection in *Hames* between the original compensable injury and the later injury was far more direct than in those earlier decisions. We pointed out that *Hames* did not involve a "but for" causation link as did *Hicks* and *Kephart*. We explained that the new injury in *Hames* "flowed directly and inexorably from the shoulder injury."

We also based our conclusion in *Hames* on our understanding of the legislative intent in adopting the 1990 amendments. Specifically, we considered whether the legislature intended to effect changes with respect to the compensability of medical treatment injuries, because prior to 1990, Oregon courts had routinely held that new injuries incurred during medical treatment of compensable injuries were themselves compensable. *Id.*; *see Williams v. Gates, McDonald & Co.*, 300 Or 278, 709 P2d 712 (1985). *See also* Larson 1, *Workmen's Compensation Law*, § 13.21 (1995). We concluded that the legislature did not intend to change the law relating to the compensability of medical treatment injuries. In particular, we relied on statements made during the legislative discussion that indicated that the change was intended to make "natural consequences" cases compensable. An example used in the legislature's discussion of a "natural consequence" involved circumstances where a person trips over crutches that are being used as a result of a compensable injury. Based on the apparent legislative intent, we concluded that the legislature intended to include medical treatment cases within the category of "natural consequences" cases.

In addition, we concluded that drawing a distinction between a compensable injury and the treatment of such an injury would be artificial. Accordingly, we held where a claimant suffers an injury as the direct result of reasonable

and necessary treatment of a compensable injury, the compensable injury is properly deemed the major contributing cause of the new condition for purposes of ORS 656.005-(7)(a)(A). *Id.* at 196-97.

In this case, the Board held, and claimant does not dispute, that the major contributing cause of claimant's need for surgery was the new injury that she sustained during the IME. Claimant essentially is urging us to extend our holding in *Hames* to hold that the compensable injury is properly deemed the major contributing cause of injuries incurred during an IME that has been ordered relating to a compensable injury.

In its decision in this case, the Board first explained that it continued to adhere to its view that in circumstances where medical treatment for a compensable injury is the major contributing cause of a new injury, the compensable injury is deemed to be the major contributing cause of the consequential condition. The Board refused, however, to extend that rationale to an injury that occurs during an IME. The Board reasoned that such an injury is different from an injury that occurs during treatment. It explained that an injury that occurs during an IME comes within the category of activities "that would not have been undertaken *but for* a compensable injury." Because of that, the Board concluded that this court's decisions in *Hicks* and *Kephart* control and, accordingly, an injury incurred during an IME will not be found compensable unless the evidence shows that the compensable injury is actually the major contributing cause of the consequential condition.

■■ We agree with the Board's reasoning and its conclusion. Admittedly, an injury that occurs during an IME is similar in some respects to an injury arising out of medical treatment. It does flow from the compensable injury. The difference, however, is a matter of degree. It simply does not flow as "directly and inexorably" from the compensable injury as does an injury arising out of medical treatment for the compensable injury. The break in the causal connection between the original injury, and the injury incurred during the IME in this case, is not as distinct as the accident in *Hicks*. The events here come closer to the facts of *Kephart*,

where the injury occurred during vocational rehabilitation. In view of our decisions in *Hicks* and *Kephart*, as well as the apparent legislative intent to limit what is included as part of the "natural consequences" of an injury, we conclude that in order for an injury incurred during an IME to be compensable as a consequence of a compensable injury, it must be established that the original injury was the major contributing cause of the consequential condition. As the Board found, the major contributing cause of the new condition here was the activities that occurred during the IME, not the original injury. Accordingly, the Board did not err in upholding employer's partial denial.

Affirmed.