Argued and submitted May 23, 1997, affirmed February 25, 1998

In the Matter of the Compensation of
Bradley B. Rogers, Claimant.

Bradley R. ROGERS,
*Petitioner,*

*v.*

CASCADE PACIFIC IND.
and EBI Companies,
*Respondents.*

(95-11898; CA A94923)

955 P2d 307

Michael Strooband argued the cause for petitioner. With him on the brief was Bischoff, Strooband & Ousey, P.C.

Howard R. Nielsen and Zimmerman, Rice & Nielsen filed the brief for respondents.

Before Deits, Chief Judge, and Warren and Haselton, Judges.

DEITS, C. J.

Haselton, J., dissenting.

## DEITS, C. J.

Claimant seeks review of a Workers' Compensation Board (Board) order holding that his cervical spine condition is not compensable as a consequence of his compensable lower back strain. ORS 656.005(7)(a)(A). We affirm.

The material facts, as found by the Board, are as follows: In November 1993, claimant injured his back while he was using a pipe wrench at work. The insurer accepted a disabling low back strain on December 14, 1993. On December 29, Dr. Macha performed a laminotomy and discectomy on claimant. A few weeks after the surgery, Macha recommended that claimant begin a post-laminectomy flexibility and strengthening program and sent him to a physical therapist for exercise instruction. Claimant fell at work in February 1994 and exacerbated his low back strain. After claimant had recuperated, Macha advised him to resume his exercise program at home.

After performing a physical examination on April 8, 1994, Macha determined that claimant was medically stationary. Macha recommended that claimant keep his back and abdominal muscles conditioned, because he was at risk for recurrent back pain in the future. Claimant's claim was closed by Determination Order on May 2, 1994. He was awarded temporary disability and 17 percent unscheduled permanent partial disability.

In early March 1995, claimant again suffered an exacerbation of his low back strain as a result of lifting 50 pound bags of concrete at work. Macha advised claimant not to work for a few days, prescribed some medication, and referred him to a physical therapist for four to six sessions of flexing and strengthening exercises. The physical therapist recommended a renewed exercise program, and claimant told the therapist that he could do the exercises at work. On March 13, 1995, the physical therapist reported that all goals had been met and that claimant would be receiving no further physical therapy. On March 30, 1995, Macha found that claimant's condition had progressed to its pre-exacerbation status, but he advised claimant to continue his exercise program.

Claimant regularly performed his exercises, including abdominal "crunches,"[1] at work before his shift started and during breaks. On August 17, 1995, claimant sought medical treatment for pain and stiffness in his cervical spine and for numbness in his hand. He reported to Macha that he had hyper-extended his neck while performing crunches as part of his exercise program.[2] Macha diagnosed neck pain and a possible herniated disc. A cervical MRI scan showed minor cervical spondylosis at C6-7 with possible disc bulging, but there was no significant disc herniation.

On October 19, 1995, employer issued a partial denial of claimant's cervical spine condition. Claimant requested a hearing on the denial and, after hearing, the administrative law judge (ALJ) set aside the denial. The ALJ concluded that the performance of the crunches was reasonable and necessary medical treatment that was integral to maintaining claimant's recovery from his low back strain and, relying on our holding in *Barrett Business Services v. Hames*, 130 Or App 190, 881 P2d 816, *rev den* 320 Or 492 (1994), held that the cervical condition was compensable as a consequence of the low back strain pursuant to ORS 656.005(7)(a)(A).[3]

The Board reversed the ALJ, holding that the cervical condition was not a compensable consequential condition because it did not arise as a "direct result of reasonable and necessary medical treatment for a compensable injury." The Board explained:

---

[1] Claimant described "crunches" as "laying [sic] on your back with your knees bent, and—and crunching up."

[2] Employer concedes that claimant's performance of the "crunches" was the major cause of claimant's cervical spine condition.

[3] ORS 656.005(7)(a) provides, in part:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

"[W]e find the causal relationship in this case between claimant's compensable low back injury and his cervical injury to be too tenuous and indirect to render the latter a compensable consequence of the former under ORS 656.005(7)(a)(A). Since claimant was doing his 'abdominal crunch' exercises on his own as a preventative measure, several months after claim closure and without any direct medical supervision, we conclude that claimant's home exercise program does not constitute 'medical treatment' for his compensable low back injury for purposes of the *Hames* analysis."

■ Claimant argues that the Board erred in concluding that his cervical injury did not result from reasonable and necessary treatment for his compensable injury and, consequently, in holding that the injury was not compensable under ORS 656.005(7)(a)(A). Claimant contends that the Board's error resulted from its misapplication and misunderstanding of this court's decision in *Hames*. He asserts that there is no significant distinction between the type of physical therapy that occurred in *Hames*, which we concluded was reasonable and necessary medical treatment, and the physical therapy that claimant was performing for his low back injury here.

We conclude that the Board did not err in holding that claimant's cervical injury was not a compensable consequential injury under ORS 656.005(7)(a)(A). As we discussed in our decision in *Hames*, and later in *Robinson v. Nabisco, Inc.*, 143 Or App 59, 923 P2d 668 (1996), *rev allowed* 325 Or 247 (1997), the legislature amended ORS 656.005(7)(a)(A) in 1990 to require that, in order for an injury or disease to be compensable as a "consequence" of a compensable injury, it must be proven that the compensable injury is the major contributing cause of the consequential condition. That amendment was a change from prior law under which a claimant could recover for injuries that would not have occurred "but for" the claimant's compensable condition. *Fenton v. SAIF*, 87 Or App 78, 741 P2d 517, *rev den* 304 Or 311 (1987). We noted further, in both *Hames* and *Robinson*, however, that, in amending ORS 656.007(7)(a)(A), the legislature did not intend to change the law relating to the compensability of injuries occurring during reasonable and necessary medical

treatment. We held that injuries occurring *during* reasonable and necessary medical treatment are considered a natural consequence of a compensable injury and, accordingly, the compensable injury is deemed to be the major contributing cause of the new condition. As we explained in *Hames*:

> "[W]here necessary and reasonable treatment of a compensable injury is the major contributing cause of a new injury, a distinction between the compensable injury and its treatment is artificial. In such instances, the compensable injury itself is properly deemed the 'major contributing cause of the consequential condition.' ORS 656.005(7)(a)(A)." 130 Or App at 196-97.

Claimant and the dissent believe that our decision in *Hames* is controlling here. In *Hames*, the claimant dislocated his shoulder at work. Because of that injury, the claimant's shoulder was, necessarily, replaced in its joint and immobilized. *Hames*, 130 Or App at 192. That, in turn, caused the claimant to develop a condition commonly called "frozen shoulder." To treat that condition, the surgeon prescribed "extremely aggressive" physical therapy to improve the range of shoulder motion. During the course of the physical therapy, which involved rigorous manipulation of claimant's shoulder and arm, his right ulnar nerve was injured. We concluded that the ulnar injury resulted from reasonable and necessary medical treatment and, therefore, was a compensable consequential condition under ORS 656.005(7)(a)(A).

Claimant asserts that our decision in *Hames* is controlling here because there is no significant difference between the physical therapy in *Hames* and the activities that claimant was undertaking here. His view is that, similar to the physical therapy in *Hames*, claimant's exercises here were reasonable and necessary medical treatment. As noted above, the Board concluded that claimant's activities that resulted in this injury were not reasonable and necessary medical treatment. The Board gave two reasons for that conclusion. First, it stated that claimant did the exercises on his own without medical supervision. Second, the Board found that the exercises were not a curative *treatment* to aid claimant's recovery but, rather, were a preventative measure.

■     Claimant argues that the reasons given by the Board do not support its conclusion that this was not reasonable and necessary medical treatment. We disagree. The fact that claimant did the exercises on his own and without direct medical supervision is not, in itself, determinative. As the dissent to the Board's opinion correctly points out, there are numerous instances where medical treatment may occur without direct medical supervision. However, the fact that the exercises were not curative but, as found by the Board, were done solely as a preventative measure, supports the Board's conclusion. At the time that claimant was injured during these exercises, he had been found medically stationary by his doctor. The doctor stated that claimant had returned to his pre-exacerbation condition and claimant's physical therapist had indicated some months earlier that no further physical therapy was necessary. Claimant was doing the exercises to remain conditioned in his back and abdomen in order to avoid future injuries. We agree with the Board that such activities do not constitute reasonable and necessary medical treatment for purposes of determining if the injury is a consequential condition of a compensable injury. The Board did not err in upholding employer's denial of claimant's claim for compensation for his cervical injury.

Affirmed.

**HASELTON, J.,** dissenting.

This case is materially indistinguishable from *Barrett Business Services v. Hames*, 130 Or App 190, 881 P2d 816, *rev den* 320 Or 492 (1994). In particular, claimant's exercise program was "reasonable and necessary medical treatment" for his compensable low back condition. Accordingly, I dissent.

In *Hames*, the claimant dislocated his shoulder at work. Because of that injury, the claimant's shoulder was, necessarily, replaced in its joint and immobilized. That, in turn, caused the claimant to develop a condition commonly called "frozen shoulder." To treat that condition, the surgeon prescribed "extremely aggressive" physical therapy to improve the range of shoulder motion. That treatment was reasonable and necessary. During the course of the physical treatment, which involved rigorous manipulation of the

claimant's shoulder and arm, his right ulnar nerve was injured. We concluded that the ulnar injury was a compensable consequential condition under ORS 656.005(7)(a):

"[W]here necessary and reasonable treatment of a compensable injury is the major contributing cause of a new injury, a distinction between the compensable injury and its treatment is artificial. In such instances, the compensable injury itself is properly deemed the 'major contributing cause of the consequential condition.' ORS 656.005(7)(a)(A)." *Id.* at 196-97.

In so holding, we emphasized that: (1) There was no dispute as to the compensability of the original shoulder injury; (2) the compensable injury was the sole reason that the claimant engaged in physical therapy; (3) the aggressive physical therapy was "reasonable and necessary treatment" of that compensable injury; and (4) the physical therapy was the major contributing cause of the ulnar nerve condition. *Id.* at 194-95. Thus, the ulnar nerve injury "flowed directly and inexorably from the shoulder injury." *Id.* at 195. Compare *Roseburg Forest Products v. Zimbelman*, 136 Or App 75, 900 P2d 1089 (1995) (discussing *Hames*: where the decedent claimant's estate sought compensation for heart attack and contended that depression precipitated by the underlying compensable condition had caused the heart attack, estate must demonstrate that (1) original compensable condition was major contributing cause of the depression and (2) the depression was the major contributing cause of the heart attack).

The circumstances here parallel those in *Hames* in three material—and ultimately conclusive—respects. First, the reason that claimant's doctor, Macha, instructed him to perform strengthening exercises, including crunches, was to address symptoms associated with the compensable low back condition and, specifically, to forestall stiffness and pain. Claimant testified that he was advised by his doctor and his physical therapist to perform "crunches," among other exercises, regularly. Claimant also indicated that Macha directly participated with the therapist in instructing him how to correctly perform each exercise, including crunches. Thus, the original compensable condition was the sole reason that claimant performed the exercises.

Second, as in *Hames*, it is undisputed that the exercises, including the crunches, were reasonable and necessary treatment for the underlying compensable condition. In particular, Macha indicated that the exercises he prescribed for claimant are commonly prescribed for persons with low back injuries because they strengthen the back and help prevent future injuries. Macha told claimant that it was important to perform those exercises regularly and permanently to avoid recurrent pain.

Finally, as in *Hames*, 130 Or App at 192 n 1, there is no suggestion in the record that the manner in which claimant performed the crunches was unreasonable or inappropriate. There is no evidence that claimant deviated, much less materially deviated, from Macha's specific instructions on the method of performing the exercises.

Conversely, the considerations that employer argues—and the majority invokes—to distinguish this case from *Hames* are unpersuasive. It is true, as the majority notes, that the exercises here were palliative, not "curative." However, that is a distinction without a difference. The majority does not explain why, or how, that is germane to the issue of whether the treatment was reasonable and necessary. As noted, the purpose of the "crunches" was to address, and forstall, stiffness and pain associated with the low back condition. At the risk of stating the obvious, not all medical treatment is curative, because not all injuries, conditions, and diseases are curable. For some conditions, the best, and sometimes the only, medical treatment is palliative treatment.

Nor is it material that claimant's doctor did not actually oversee and personally supervise claimant's daily exercise routine. By hypothetical, but principled, extension, employer's argument in that regard would mean that, if a physician prescribed medication to address a compensable condition and the claimant suffered injurious side effects as a result of taking the medication, the consequential injuries would be compensable if the claimant took the medication in the physician's presence, but not if the claimant did so at home. To the extent that employer's concern is that there may be a greater potential for a claimant to perform exercises

improperly when not under a physician's direct personal supervision, that concern is addressed by determining whether a claimant did, in fact, perform the exercises in the prescribed fashion. As noted, there is no suggestion in this record that claimant deviated from Macha's directions.

Finally, the indefinite duration of claimant's exercise program does not mean that that treatment was not reasonable and necessary. If a claimant's medical condition is chronic, and the physician prescribes a reasonable and necessary course of medical treatment, an injury that "directly and inexorably" flows from that treatment, even after the claim has closed, should be compensable, just as any other consequential condition would be. *See Hames,* 130 Or App at 195. Duration of treatment does not mean remoteness of causation.

*Hames* controls. Claimant's exercise program was a reasonable and necessary treatment for his compensable low back strain. Because the Board never reached and addressed whether claimant's performance of the crunches was, in fact, the major contributing cause of claimant's cervical spine injury, ORS 656.005(7)(a)(A), this case should be remanded to the Board to consider that issue.